224

REHOR, APPELLEE, *v.* CASE WESTERN RESERVE UNIVERSITY, APPELLANT.

(No. 74-899—Decided July 23, 1975.)

226

*Messrs. Bertsch, Edelman & Fludine, Mr. Richard M. Bertsch* and *Mr. Thomas J. Dorchak,* for appellee.

*Messrs. Schneider, Smeltz, Huston & Bissell, Mr. James I. Huston* and *Mr. Thomas J. LaFond,* for appellant.

CORRIGAN, J. Fundamentally, this is an employment contract case. It is concerned with the period of employee's term of employment.

However, the lawsuit more importantly involves an interpretation of "tenure,"[1] as that term is used in em-

---

[1]The 1940 Statement of Principles by the American Association of University Professors reads, in part:

"Academic Tenure

ployment contracts of professors with colleges and universities. But, with more particularity, the cause also involves the retirement of a tenured professor because of age.

This court has the advantage of oral argument and carefully prepared briefs by counsel for the parties, and, in addition, briefs *amici curiae* from the American Association of University Professors, in support of plaintiff; from the Attorney General of Ohio, in support of position of defendant on behalf of Bowling Green State University, Central State University, Cleveland State University, Kent State University, Medical College of Ohio at Toledo, Ohio University, University of Toledo, and Youngstown State University; and, from the trustees of Boston University in support of defendant's position.

This is a case of first impression in Ohio.

Defendant urges the reversal of the judgment of the Court of Appeals, and poses four propositions of law in support of its position. Each will be considered in the order presented.

## I.

Defendant contends that, where a university faculty member is employed, using standard annual reappointment forms which do not set forth in full the terms and conditions of employment, the university's employment policies, rules and regulations become part of the employment contract between the university and the faculty member.

Plaintiff admits in his brief that: "There has been universal acceptance of this proposition by both the parties and the courts below insofar as it holds that the full con-

---

"(a) After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their service should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies."

tract between the plaintiff and defendant contains the various rules and regulations and policies of the university * * *.'' Plaintiff, later in his brief, states: ''As far as defendant's Proposition of Law No. 1 is concerned, the plaintiff simply restates that he agrees with it as long as it is deemed to include the possibility of such a contract conferring vested rights to future benefits upon the parties to it.''

The latter qualification of plaintiff brings to the front and center paragraph one of the syllabus of the Court of Appeals' decision, which reads as follows:

''An award of academic tenure vests a university faculty member with the right to continued reappointment to the faculty unless sufficient cause is shown for his termination.''

We do not agree with that conclusion of the Court of Appeals.

Academic tenure does not, in the manner expressed, vest a faculty member with the right to continued reappointment to the faculty, and we so hold. A vested right is a right fixed, settled, absolute, and not contingent upon anything. Such is not the case here.

The only signed documents evidencing the employment agreement between Professor Rehor and Case Western Reserve University are the annual reappointment forms, which appear as exhibits in the record. There are also 12 annual reappointment contracts in the record between Professor Rehor and former Western Reserve University. The annual reappointment forms do not state the components of tenure or of retirement. Likewise, they do not state faculty fringe benefits, perquisites of faculty appointment, or faculty standards. All of these matters are established by various policies, rules and regulations adopted by defendant and promulgated to its faculty.

It is agreed by plaintiff and defendant that a university's policies, rules and regulations relating to faculty members become a part of the employment contract as a matter of law. The trial court properly adhered to that

principle. The Court of Appeals also agreed[2] but, oddly, did not follow it in its decision.

Accordingly, we agree with defendant's first proposition of law and hold that the retirement policy of defendant established in its policies, rules and regulations—which includes the amended retirement policy adopted April 16, 1969—was part of the annual employment agreements between plaintiff and defendant after July 1, 1967.

## II.

Defendant urges, as its second proposition of law, that a university's grant of tenure to a faculty member does not preclude the university from thereafter changing the retirement age for all faculty members including the tenured faculty member, provided the change is reasonable and uniformly applicable.

Here, it is stipulated that Professor Rehor had academic tenure. The purpose of academic tenure, as used in the academic community, is the preservation of academic freedom and the correlative protection of economic security for teachers. It insures that a professor will not lose his

---

[2]In its opinion, the Court of Appeals stated:

"The terms of Dr. Rehor's contract with C. W. R. U. and Western Reserve were not contained in any single instrument. Instead, C. W. R. U. used the common practice of tendering annual reappointment forms which contained certain terms of Dr. Rehor's employment contract such as salary, rank, and tenure status, and the parties have admitted further that the rules, regulations, and policies of the university, as contained in the 1964 Western Reserve Faculty Handbook, were also part of appellant's contract with appellee. There is extensive authority in accord with the proposition that university rules, regulations, bylaws, and policies become implied terms of faculty employment contracts and thereby give rise to protectable rights. See *Perry* v. *Sindermann, supra* [(1972), 408 U. S. 593], at 601-602; *Zimmerer* v. *Spencer* (5th Cir., 1973), 485 F. 2d 176, 178; *Greene* v. *Howard University* (D. C. Cir., 1969), 412 F. 2d 1128, 1135; *Downs* v. *Conway School Dist.* (E. D. Ark., 1971), 328 F. Supp. 338, 348-349; *Zimmerman* v. *Minot State College* (N. D. 1972), 198 N. W. 2d 108, 114; *Hillis* v. *Meister* (1971), 82 N. M. 474, 483 P. 2d 1314; see also C. Byse & L. Joughin, *supra* [Tenure in American Higher Education], at 82-84."

job for exercising academic freedom, namely, his rights to teach, to think and to speak in accordance with his conscience in the traditions of the academic community. In the establishment of tenure, the former Western Reserve University provided, in its 1964 Faculty Handbook:

"A faculty member shall have academic freedom and tenure in accordance with the current statement of principles as approved jointly by the American Association of University Professors and the Association of American Colleges." (See fn. 1.)

In a supplemental statement to its 1940 Statement of Principles on Academic Freedom and Tenure, the American Association of University Professors, in 1950, issued its "Statement of Principles on Academic Retirement and Insurance Plans," which was reaffirmed in 1969. Paragraph 9 of that statement reads:

"When a new retirement policy or annuity plan is initiated or an old one changed, reasonable transition provisions, either by special financial arrangements or by the gradual inauguration of the new plan, should be made for those who would otherwise be adversely affected."

And, paragraph 1d. of that some statement recommends that the retirement policy of a university should:

"Be reviewed periodically by faculty and administration of the institution, with appropriate recommendations to the institution's governing board, to assure that the plans continue to meet the needs, resources, and objectives of the institution and the faculty."

So, paragraph 9 of the policy statement on retirement demonstrates the understanding of the academic community that the retirement policy of a university can be changed. and paragraph 1d. points out that a retirement policy should be changed if needed.

This change in Case Western Reserve University's amended retirement policy was made upon the recommendation of its faculty, after study and open hearings; the amended retirement policy had a grandfather provision. When its retirement policy was amended, it also amended

its pension plan to provide increased university contributions to Professor Rehor's retirement plan account. Professor Rehor's retirement age of 68, under the amended retirement policy, was well within the American Association of University Professors' suggested range of retirement ages from 65 to 70. Rehor's salary was increased annually in each year of his employment under Case Western Reserve University from September 1969 to June 1973. A representative of the association was an *ex officio* member of the committee that recommended the amended retirement policy. All the above facts indicate the reasonableness of the policy. Its uniform application is obvious. And no objection to the policy was ever raised by the American Association of University Professors, the plaintiff or any other faculty member after its adoption on April 16, 1969, until the spring of 1973.

We approve defendant's proposition of law No. 2, and reject the conclusion of law reached by the Court of Appeals, as stated in paragraph three of its syllabus, that:

"Where a faculty member is awarded tenure by a university and the faculty bylaws of the university at that time state that the mandatory retirement age for faculty is 70 years, such provision in the faculty bylaws becomes a binding term of the faculty member's employment contract with the university, the faculty member has a vested right to be reappointed to the faculty to age 70, and the university cannot thereafter lower the faculty member's mandatory retirement age without abridging the employment contract."

## III.

Defendant, in his proposition of law No. 3, asserts that a university's bylaw, stating that the board of trustees shall from time to time adopt such rules and regulations governing the appointment and tenure of the members of the faculty as the board of trustees deems necessary, includes a reservation of the right to change the retirement age of the faculty.

The right of defendant to change its retirement policy

appears in Article VI of the bylaws of Western Reserve University's Board of Trustees, which provides:

"The Board of Trustees shall from time to time adopt such rules and regulations governing the appointment and tenure of members of the several faculties as said board deems necessary."

The Court of Appeals allowed that Article VI was a reservation of right, but considerd it as a power over appointment and tenure generally and viewed the statement of retirement policy set forth in the 1964 Faculty Handbook[a] as an express provision. Then, citing *Freeland* v. *Freeland* (C. A. 6, 1940), 110 F. 2d 966, the Court of Appeals held that the express provision of the contract controlled the general provision so that defendant's reserved right in Article VI did not apply to the retirement policy set out in the 1964 Faculty Handbook.

As we view these two clauses, we are of the opinion that each is an express clause and the reserved right to change applies to all aspects of tenure, including retirement.

Either the retirement policy set forth in Section IV of the university's Statement of Principles for Appointment, Tenure and Separation for the Guidance of Faculties is part of and protected by tenure, or it is not; and, if the retirement policy is a part of tenure, and we hold that it is, then the reserved right to change rules of tenure includes the right to change the retirement policy.

We accept and approve defendant's third proposition of law.

---

[a]Section IV of the Statement of Principles for Appointment, Tenure and Separation for the Guidance of the Faculties reads:

"It is provided, however, that the services of all members of all Faculties shall automatically terminate on June thirtieth following the date upon which they reach the age of seventy years, or upon their seventieth birthday if that falls on June 30, excepting that, in conformity with action heretofore had by the Faculty of the School of Medicine, the age of retirement of members of the teaching staff of the School of Medicine appointed on or after October 10, 1945, shall be sixty-five years."

234

*IV.*

The fourth proposition of law advanced by defendant is to the effect that an employment contract between a university and a tenured faculty member may be amended by the parties in writing when supported by adequate consideration.

Defendant amended its retirement policy in 1969. This changed plaintiff's retirement age from 70 to 68 years with a right in plaintiff to be appointed beyond age 68 upon recommendation of a faculty committee. On July 6, 1970, after having been advised of the amended retirement policy and its specific application to him, plaintiff signed his 1970-1971 annual reappointment form, which gave him a $500 salary increase. On May 6, 1971, plaintiff signed his 1971-1972 reappointment form, which also specified a $500 salary increase. Then, on May 17, 1972, plaintiff executed a 1972-1973 reappointment form which provided that it was a "[t]erminal appointment, with retirement on June 30, 1973," and it carried another $500 salary increase.

Thus, there was demonstrated adequate consideration for the amendment of the employment contract by the change in the retirement policy of the university.

*CONCLUSION.*

The trial court correctly concluded that the contract between the parties permitted defendant to change its retirement policy; further, that plaintiff had consented to that change and that there was not a breach of contract.

For the reasons stated above, the judgment of the Court of Appeals is reversed, and the judgment of the Court of Common Pleas is reinstated.

*Judgment reversed.*

HERBERT, STERN, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., concurs in paragraphs one, two and three of the syllabus and in the judgment.

CELEBREZZE, J., dissents.

CELEBREZZE, J., dissenting. While I can accept many of the general statements of the majority as correct statements of legal theory, when that theory is brought into contact with the specific facts of *this* case, I am unable to concur in the result.

The Court of Appeals made a simple case, which should have been decided on narrow equitable and contractual grounds, into a broad statement capable of affecting university-instructor relationships in many areas. The arguments before us were couched in the same far-reaching language.

The majority of this court has chosen to treat the issues in this case in the same vein. Unfortunately, Professor Rehor, with equity and long service on his side, is rejected in the creation of the *cause celebre*.

Professor Charles F. Rehor, until he was 64 or 65 years old, had a reasonable expectation that he would work at his chosen profession until he reached the age of 70. From the record, we find that Professor Rehor's salary was $10,000 for the school year September 1966 to June 1967; $10,500 for September 1967 to June 1968; $12,500 for September 1968 to June 1969; $13,300 for September 1969 to June 1970; $13,800 for September 1970 to June 1971; $14,-300 for September 1971 to June 1972; and $14,800 for September 1972 to June 1973. Although Professor Rehor received a raise in each of the years from 1963 to 1973, the majority says that the $500 raises given in the last three years were adequate consideration for the change in his retirement date.

I find no evidence in the record that Professor Rehor accepted the modification in the term of his employment in return for the three $500 increments. Of course, the mere fact that the University offered the salary increments does not show that they were offered explicitly for that reason. Without an agreement supported by sufficient consideration there can be no effective modification. This is not to say that the University could not change the retirement age; only that those adversely affected must be com-

pensated. Here there is no showing of an agreement, and the adequacy of the consideration is certainly in doubt.

The majority relies upon portions of the Statements of the American Association of University Professors. These Statements provide suggested limitations on the admitted power of the University to change its retirement policy; and the University explicitly adheres to those Statements. The majority accepts the University's argument that changes in retirement policy need only be reasonable and uniformly applicable. However, the 1950 Statement of Principles on Academic Retirement and Insurance Plans makes clear that:

"When a new retirement policy or annuity plan is initiated or an old one changed, reasonable transition provisions either by special financial arrangements or by the gradual inauguration of the new plan, should be made for those who would otherwise be adversely affected."

Thus, the American Association of University Professors suggests that something akin to a "grandfather clause" is necessary for those faculty members adversely affected.

The University argues that these Statements provide the common "understanding of the academic community." It further argues that since the University contribution to the pension plan was increased so that no loss in pension occurred, it had sufficiently complied.

However, those arguments ignore the fact that Professor Rehor was relying on the salary he would receive in the last two years of his long career. A comparison of his probable salary and the pension to which he is entitled points out in stark fashion the extent of his deprivation. According to a letter sent by Professor Rehor to the president of the University, his pension in 1975 would be $4,755. His average salary over the period 1966 to 1973 was $12,700. There can be no better evidence of the University's failure to provide *reasonable* transition provisions for Professor Rehor.

For the foregoing reasons, I respectfully dissent.