ASHLEY S. ROSE, Plaintiff-Appellant, *v.* ELMHURST COLLEGE, Defendant-Appellee.

Second District   No. 77-185

Opinion filed August 1, 1978.

Fred R. McMorris, of Mirabella, Facktor, Mirabella & Kincaid, of Wheaton, for appellant.

Sandra P. Zemm, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Ashley S. Rose sued Elmhurst College to recover his position as a tenured professor. He appeals from a summary judgment entered in favor of the college.

Plaintiff was initially employed as an assistant professor of religion for the academic year 1967-1968. He accepted annual offers of employment in 1968, 1969, 1970 and 1971. The offer of employment tendered to him in February of 1971 included the statement: "Tenure Status: At the completion of this academic year you will be granted tenure. Congratulations." Plaintiff thus became a tenured professor at the end of the 1971-72 academic year.

The 1969 Faculty Manual of Elmhurst College stated:

"Permanent tenure on the teaching faculty of the College shall mean the opportunity to accept full-time employment in duties appropriate to his training and experience as a member of the teaching faculty through each successive academic year at a salary within the range for the appointee's rank as indicated by the announced faculty salary schedule of the College for the particular year. The permanent tenure of a member of the teaching faculty

shall continue until death, resignation, retirement because of age or disability, discontinuance of his teaching position *because of decline in enrollment or lack of funds,* or termination of his appointment for adequate cause." (Emphasis added.)

The Manual also stated that:

"Subject only to limitations imposed upon the Board of Trustees by the practical exigencies of enrollment and financial availability as judged by the Board, the applicable provisions set forth in the foregoing paragraphs shall be deemed a part of the College's contractual commitment to each faculty member in consideration of his faithful adherence to his own contractual commitments to the College."

Plaintiff received statements of prospective salary for the 1972-1973 academic year in March 1972; he also received such statements in April 1973; April 1974, and June 1975. The plaintiff, as a tenured professor, was no longer required to sign annual written offers of employment.

In 1974, the trustees, in response to a proposal by the Faculty Council, adopted revisions in the existing Faculty Manual. An internal appeal procedure was provided; and the stated bases for termination of tenured faculty were amended to read:

"The permanent tenure of a member of the teaching faculty shall continue until: retirement, death, or resignation, termination for adequate cause or for medical reasons, *termination due to financial exigency or elimination or curtailment of an academic program.*" (Emphasis added.)

The new manual was approved by a majority of the faculty. There is no indication in the record as to whether plaintiff voted on the proposed changes, which were distributed to each faculty member.

In June of 1975, the college sent plaintiff a letter which terminated his employment effective August 31, 1976 and stated:

"This action is being taken in accordance with institutional procedures for the termination of tenured faculty when an academic program or department is eliminated or curtailed. The criteria applied for termination of your contract are the length of service and rank criteria."

The plaintiff appealed his discharge, following the review procedures set forth (for the first time) in the 1974 version of the Faculty Manual. He first met with the dean of the college, the department chairperson and the division chairperson; then appealed the adverse decision to the Faculty Appeal Board. In the hearing before the board, plaintiff's counsel stated that plaintiff's participation in the review procedures established by the 1974 Faculty Manual was under protest and that he objected to the use of any procedure established by the trustees after the date on which he first

received tenure. The Faculty Appeal Board recommended that the college "reconsider" its decision to dismiss the plaintiff. The president of the college, however, whose recommendation was the third step in the review procedure, reached a conclusion contrary to that of the board. Plaintiff as a final step appealed to the Executive Committee of the Board of Trustees which sustained the action of the administration terminating plaintiff's employment. Thereupon plaintiff sued in circuit court resulting in the summary judgment from which he has appealed.

The question is whether any genuine issue of material fact exists on the record which would preclude summary judgment. Plaintiff contends that the Faculty Manual of 1969 created a contract of employment under which plaintiff as a tenured professor could only be terminated under the circumstances in this record by proof of a "decline in enrollment or lack of funds"; and that the facts bearing on this question were the subject of an administrative hearing, the substance of which is not encompassed in the pleadings and affidavits before the trial court and would be presented upon a trial. In addition, he argues that whether the 1974 Manual unilaterally changed the definition of "tenure"; and whether, if it did, plaintiff assented to the change by continuing his employment, also pose genuine and unresolved issues of material fact.

The college contends that the construction of plaintiff's contract of employment (including whether it incorporated the provisions of the 1974 Manual or only those of the 1969 Manual and whether plaintiff accepted employment subject to the provisions of the 1974 Manual) were properly determined by the trial court as matters of law; that in any event there was no substantive change in the definition of tenure in the 1974 Manual; and that no genuine issue of material fact exists which would dispute the proof that plaintiff's contract was terminated because of a decline in enrollment which required curtailment of the department.

When plaintiff acquired tenure status at the end of the 1971-1972 academic year, the provisions of the 1969 Faculty Manual relating to tenure became part of the contractual commitment of the college to the plaintiff.[1] The trial court concluded as a matter of law that the 1974 Manual adopted by the college and faculty was the one in effect at the date that plaintiff's contract was terminated. In any event, while the court acknowledged that the plaintiff protested the application of the 1974 Manual at his termination hearing, the judge held that this was ineffective since plaintiff had chosen to accept employment and, in fact, had followed the applicable appellate procedure which was only incorporated in the 1974 Manual. In our view of the case we do not find it

---

[1] It appears that there was a 1972 Manual which is not in the record and which would apply to plaintiff's employment. However, the parties have agreed that the 1972 college manual made no relevant changes in the provisions found in the 1969 Manual.

necessary to decide this question as a matter of law since we believe that the plaintiff is no better off by reliance upon the provisions of the 1969 Manual.[2] A decline in enrollment, which is a stated ground for termination set forth in the 1969 Manual, was established by the pleadings, affidavits and documents in the record leaving no genuine or material question of fact and thus making summary judgment appropriate. The uncontradicted evidence indicates that the college's curtailment of the department of religion as well as other departments was a direct consequence of declining enrollment. There is no suggestion in the record that the action of the college was taken in bad faith or was arbitrarily directed at this plaintiff. Of course, the principal purpose of tenure is to "eliminate the chilling effect which the threat of discretionary dismissal casts over academic pursuits" (see *Browzin v. Catholic University*, 527 F.2d 843, 846 (D.C. Cir. 1975); compare *American Association of University Professors v. Bloomfield College*, 129 N.J. Super. 249, 322 A.2d 846, 856-57 (1974)), but this concern is not involved in the circumstances before us. Although the June 2, 1975, letter to the plaintiff stated that he was being terminated because of the curtailment of an academic program or department, using the terminology of the 1974 Manual, the intrauniversity hearings indicated that the reason for the curtailment of the religion department was not distaste on the part of the trustees for the courses being taught or any reflection on the person of the plaintiff but was rather based on the decline in that department. The plaintiff has not challenged the accuracy of the figures adduced by the college demonstrating the decline in enrollment. At best he has made a suggestion in oral argument that a search of the record will show that an issue of fact remains as to whether the decline in enrollment had been compensated for by other teachers leaving the religion department before plaintiff was terminated. We have examined the record, however, and find no support for this contention in the pleadings and affidavits; and at most an equivocal reference in a chart entitled "Special Factors Affecting Number of Courses Taught in the Religion Department" to one teacher who assumed an administrative post on January 1, 1974, and the

---

[2] We would find some difficulty, however, in concluding if we were to reach the issue, that "tenure" simply means the right each year to accept employment on whatever terms the trustees establish from time to time; or to conclude that a tenured professor could be required to give up tenure privileges as a condition for the annual renewal of his contract. At the very least a factual issue would necessarily be present to determine whether there is an unwritten "common law" comprised of the conduct, customs and usage of the academic community in general or of Elmhurst College in particular, which would permit unilateral modification by the college trustees of a college's tenure commitment to its faculty members. See *Perry v. Sindermann*, 408 U.S. 593, 601-02, 33 L. Ed. 2d 570, 580, 92 S. Ct. 2694, 2699-2700 (1972). See also *Greene v. Howard University*, 412 F.2d 1128, 1135 (D.C. Cir. 1969), and *Browzin v. Catholic University*, 527 F.2d 843, 848 (D.C. Cir. 1975). See also *State v. Ayers*, 108 Mont. 547, 92 P.2d 306, 311 (1939).

release of another in August of 1973. The import of this information is nowhere explained and does not raise a genuine issue of material fact. (See *Elm Lawn Cemetery Co. v. City of Northlake*, 94 Ill. App. 2d 387, 392 (1968).) The "trial court was not permitted to surmise or speculate," in the manner plaintiff has suggested, in the absence of supporting counteraffidavits. *Tuohey v. Yellow Cab Co.*, 33 Ill. App. 2d 180, 184 (1962).

The summary judgment entered by the trial court is therefore affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.