**Edmund H. LINN, Plaintiff,**

v.

**ANDOVER–NEWTON THEOLOGICAL SCHOOL, Defendant.**

**No. CA 82–3908–T.**

United States District Court, D. Massachusetts.

July 9, 1986.

Warren H. Pyle, Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., for plaintiff.

Stuart DeBard, Weston, Patrick, Willard & Redding, Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Dr. Edmund H. Linn, a tenured faculty member of defendant Andover-Newton Theological School, was fired at the age of 62, after 31 years of service. He, thereafter, brought this suit, claiming that his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA")[1] and in breach of plaintiff's employment contract with defendant. Presently at issue is plaintiff's renewed motion for partial summary judgment.

---

**1.** The Age Discrimination in Employment Act provides in pertinent part:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a).

## I.

The material facts are undisputed. On December 3, 1980, the executive committee of the defendant's board of trustees met, ordered the president to reduce the defendant's budget by at least $50,000, and appointed a four member faculty advisory committee to make recommendations with respect to the implementation of its order. On December 11, 1980, the faculty advisory committee met and recommended that the plaintiff be discharged. On December 23, 1980, the executive committee accepted the faculty advisory committee's recommendation to discharge the plaintiff. On December 29, 1980, the plaintiff received a letter from the president, giving him one-year's notice of his discharge. The executive committee's discharge of the plaintiff was approved by the full faculty on March 6, 1981, and by the full board of trustees on May 6, 1981.

## II.

Plaintiff has moved for summary judgment on Count 2 of the complaint, which alleges that plaintiff was terminated in violation of the terms of his contractual academic tenure rights. To prevail on this cause of action, plaintiff must establish that 1) a contract was in force between the parties, 2) the contract established the procedures to be followed in the event of plaintiff's discharge, and 3) these procedures were not followed by defendant in discharging plaintiff.

## A.

It is uncontested that a contract was in existence between the two parties, and that the contract established procedures to be followed in the event of discharge. Defendant admits that the Andover-Newton Theological School Faculty Promotion and Tenure Policy ("FPTP") and the 1972

American Association of University Professors Recommended Institutional Regulations on Academic Freedom and Tenure ("1972 AAUP Regulations") were part of plaintiff's contract with the Andover-Newton Theological School. *See* Defendant's Amended Answers to Plaintiff's Requests for Admissions 23(a), 24(a), and 24(b). These documents contain provisions governing termination of a tenured faculty member.

> Where termination of an appointment with continuous tenure, or of a nontenured appointment before the end of the specified term, is based on bona fide financial exigency or discontinuance of a program or department of instruction, Regulation 5 will not apply, but faculty members shall be able to have the issues reviewed by the faculty, or by an appropriate faculty committee (such as the faculty's grievance committee), with ultimate review of all controverted issues by the governing board.

Regulation 4(c), 1972 AAUP Regulations. Defendant claims that plaintiff's dismissal was pursuant to both a bona fide financial exigency and discontinuance of his position. Thus, Regulation 4(c) provides the relevant procedures governing plaintiff's discharge.[2]

## B.

Given the applicability of Regulation 4(c), the controlling question is whether its provisions were followed by defendant when discharging plaintiff.

It is undisputed that defendant did not give plaintiff any opportunity to participate in the deliberations of either the faculty advisory committee or the executive committee. Defendant's bottom line position is that Regulation 4(c) did not require the school to allow plaintiff to participate in any way at any stage of the deliberations.[3]

The parties agree that the procedures set forth in Regulation 5 were not followed.

**2.** If the asserted reason or reasons for termination were other than financial exigency or discontinuance of a program or department of instruction, then Regulation 5, requiring a far more elaborate procedure, would be applicable.

**3.** Defendant also argues at length, and cites a large number of cases in support of the proposition that, in situations of financial exigency, a school is not required to provide faculty mem-

This precise issue, however, has previously been decided in this case. In its opinion issued February 7, 1985, this court stated:

> This court interprets Regulation 4(c) as requiring that the faculty member facing termination be allowed to participate in the proceedings before the faculty group and the governing board. Without an opportunity to be heard, the faculty member in jeopardy would be unable to have the "issues reviewed" in any meaningful sense. ... Even assuming that the plaintiff's termination was based upon financial exigency, therefore, the defendant failed to follow its own rules and regulations.

*Linn v. Andover-Newton Theological School,* 642 F.Supp. 11, 12–13 (D.Mass. 1985).

Defendant has failed to present any arguments that were not pressed before the February 7, 1985 decision. Nevertheless, this court has reconsidered its former ruling, and has reached the same result. Regulation 4(c) states that faculty members "shall be able to have the issues reviewed" by a faculty committee and the governing board. That language clearly supposes that an aggrieved faculty person has a contractual right to request a review of his termination. To have any substance, the right to request review of an issue must carry with it a corollary right of the petitioner to present his point of view on the issue, whether in writing or in person. How else is the reviewing body able to know what is on the petitioner's mind, or why he requested a review? Here, defendant acted without any opportunity for plaintiff to be heard, in either a literal or figurative sense. In doing so, defendant breached Regulation 4(c).

## CONCLUSION

The parties agree that the Andover-Newton Theological School FPTP and the 1972 AAUP Regulations were a part of the contract between plaintiff and defendant. The parties further agree that the 1972 AAUP Regulation 4(c) governed the procedures to be followed in terminating a tenured faculty member in instances of financial exigency or the elimination of a teaching position. This court finds that defendant violated Regulation 4(c) by failing to provide plaintiff any opportunity to participate in the review process. This court concludes, therefore, that plaintiff is entitled to summary judgment on Count 2 of the complaint, for breach of his employment contract by defendant.

AN ORDER WILL ISSUE.

bers with pre-termination hearings. The majority of these cases, however, involve state schools, and rest on due process grounds. *See, e.g., Jimenez v. Almodovar,* 650 F.2d 363, 369–70 (1st Cir.1981) (14th Amendment due process does not require a pre-termination hearing where a state university eliminates faculty positions); *Brenna v. Southern Colorado State College,* 589 F.2d 475 (10th Cir.1978) (state university termination of a tenured faculty member pursuant to a financial exigency did not violate substantive due process); *Leavitt v. Board of Trustees of Nebraska State Colleges,* 376 F.Supp. 945 (D.Neb.1974) (state university termination of tenured faculty member pursuant to financial exigency, following a complete hearing in which plaintiff had full rights of participation, did not violate due process).

The procedures required to be provided to faculty members by private institutions, however, depend on the specific terms of any contract in force between the school and its faculty members. Thus, cases cited by defendant, holding that schools with different contractual arrangements with their faculties were not required to provide pre-termination hearings in instances of financial exigency, are inapposite. *See, e.g., Bignall v. North Idaho State College,* 538 F.2d 243, 249 (9th Cir.1976) (applying the 1940 AAUP Statement on Academic Freedom and Tenure); *Krotkoff v. Goucher College,* 585 F.2d 675 (4th Cir.1978) (applying college by-laws and the 1940 AAUP Statement); *Rose v. Elmhurst College,* 62 Ill.App.3d 824, 19 Ill.Dec. 919, 379 N.E.2d 791 (Ct.App.Ill.1978) (applying college's 1969 Faculty Manual); *Rehor v. Case Western Reserve University,* 43 Ohio St.2d 224, 227, 331 N.E.2d 416 (1975) (applying the 1940 AAUP Statement).