JOURNAL ENTRY AND OPINION. *Page 3 
{¶ 1} Plaintiff-appellant, Harvey Salkin ("Salkin"), appeals the trial court's granting of summary judgment in favor of defendant-appellee, Case Western Reserve University ("CWRU"). Finding no merit to the appeal, we affirm.
 {¶ 2} In 1969, Salkin was hired by CWRU as an assistant professor in the Department of Operations Research at the Weatherhead School of Management ("Weatherhead"). In 1980, Salkin was made a full professor and awarded tenure. Salkin currently teaches at Weatherhead.
 {¶ 3} Each year, faculty members are subject to CWRU's mandatory faculty reappointment process. This process includes an evaluation of the prior year's performance and an allocation of research, teaching, and service for the upcoming year.
 {¶ 4} Salkin's lawsuit focuses on a memorandum he sent to the Dean that summarized his understanding of the faculty reappointment process for the 1999-2000 academic year. On June 7, 1999, Salkin sent a memorandum ("1999 memo") to Kim Cameron, the Dean of Weatherhead at the time, with the subject heading, "Our Agreement." In the memo, Salkin reiterated his conversations with Dean Cameron regarding the yearly faculty reappointment process. Salkin wrote:
 "* * *We agreed to the following workload:
 i. I will teach five (5) mutually agreeable courses per academic year.
 ii. I will undertake a more formal, mutually agreeable leadership role in WSOM [Weatherhead School of Management] activity. *Page 4 
 According to your representation, this workload is equivalent to that of all full-time faculty at the WSOM.
 If we are in agreement, please place your initials next to your name above and return a copy of this memo to me. * * *"
The memo was initialed by both Dean Cameron and Salkin and a copy was sent to Matthew Sobel ("Sobel"), Salkin's department chair at the time.
 {¶ 5} In the Spring of 2000, Salkin approached Sobel expressing interest in teaching an engineering economics course offered at Weatherhead, OPRE 345. Salkin continued to teach this course until the Fall of 2003, when Sobel cancelled it because of low enrollment. In investigating the cause for the low enrollment, Sobel discovered that Salkin was not teaching the course in a manner consistent with the description found in CWRU's course bulletin. Salkin used the same teaching syllabus for OPRE 345 that he used for another course he taught. Sobel initially informed Salkin that the course would be offered again in the Spring of 2004 if Salkin agreed to teach it according to the course bulletin. Salkin expressed no interest in teaching the course according to the course bulletin. Salkin suggested that Sobel find another professor to teach the course because the course was no longer mutually agreeable to him. After several discussions, Sobel advised Salkin that his teaching duties for the Spring semester of 2004 included teaching OPRE 345 in accordance with the description in CWRU's course bulletin. Sobel further advised *Page 5 
Salkin that his refusal to do so would be considered grave misconduct and serious neglect of his academic and professional responsibilities.
 {¶ 6} Subsequently, Salkin taught the course under protest and filed a grievance with CWRU against Sobel on December 31, 2003. Salkin claimed violation of academic freedom and breach of contract (the 1999 memo). The Grievance Committee, which had members selected by Salkin and Sobel, denied Salkin's grievance. Salkin appealed to the university president, who reaffirmed the committee's decision.
 {¶ 7} In March 2004, Salkin filed suit against CWRU for breach of contract, breach of implied contract, and promissory estoppel. Salkin later amended his complaint to include declaratory relief. In June 2005, CWRU filed its motion for summary judgment, arguing that the 1999 memo is not a contract. Salkin filed his brief in opposition and motion for a partial summary judgment in July 2005. In March 2006, the trial court denied Salkin's partial summary judgment motion and granted CWRU's motion for summary judgment. Salkin now appeals, raising one assignment of error.
 {¶ 8} In his sole assignment of error, Salkin claims that the trial court erred as a matter of law when it granted CWRU's motion for summary judgment and refused to recognize the 1999 memo as a binding employment contract.
 Summary Judgment *Page 6 {¶ 9} Appellate review of summary judgments is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241;Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581,585, 706 N.E.2d 860. The Ohio Supreme Court stated the appropriate test in Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201, as follows:
 "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."
 {¶ 10} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.
 Breach of Contract {¶ 11} Salkin argues that the 1999 memo he authored and Dean Cameron initialed was a binding employment contract. He contends that CWRU breached the *Page 7 
contract when he taught OPRE 345 in the Spring of 2004. The law is well settled that in order to constitute a valid contract, there must be a meeting of the minds of the parties, which is achieved by an offer and acceptance of the contract's provisions. See Noroski v. Fallet (1982),2 Ohio St.3d 77, 79, 442 N.E.2d 1302; 17 Ohio Jurisprudence 3d (1980), 446, Contracts, Section 17; Isquick v. Classic Autoworks, Inc. (1993),89 Ohio App.3d 767, 772, 627 N.E.2d 624. Moreover, in Feldman v.Roth (1932), 12 Ohio Law Abs. 121, Summit App. No. 2098, the Ninth District Court of Appeals found that:
 "To constitute a valid contract there must be parties capable of contracting, a lawful subject matter, a sufficient consideration, a meeting of the minds of the parties, an actual agreement between the parties to do or to forbear doing the thing proposed in the agreement, and a compliance with the law in respect of any formal requisites which may pertain to the contract. It is fundamental that mutual consent is essential to every agreement, and that as a rule there can be no binding contract where there is no real consent." Id.
 {¶ 12} Salkin argues that the 1999 memo manifested a mutual intent to be bound. He contends that the offer is established by the text of the 1999 memo. Salkin claims that the parties and subject matter are identified, the memo is dated, and it is a multi-year agreement. Salkin contends that the acceptance is evidenced by both parties initialing their respective names. Further, Salkin argues that consideration is demonstrated by his continued employment at CWRU. He also maintains that CWRU breached the 1999 memo when Sobel instructed him to teach *Page 8 
OPRE 345 according to the course bulletin description, because it was a course that was "not mutually agreeable."
 {¶ 13} In the instant case, we find that Salkin failed to demonstrate that the 1999 memo constituted a contract. Salkin made no offer because the 1999 memo restated the terms of his pre-existing faculty agreement with CWRU. Our review of the record reveals that Dean Cameron intended the 1999 memo to be a written administrative record of the annual discussions between the Dean and Salkin. As part of the reappointment process, Dean Cameron reduced Salkin's teaching load to five courses instead of the maximum six, so that Salkin could focus on adding service and administrative duties. Therefore, no offer by Salkin exists, and because there was no offer, there could be no acceptance by CWRU. Moreover, Salkin failed to demonstrate sufficient consideration. CWRU received no benefit because Salkin was already obligated under his employment contract to teach at CWRU. Therefore, we find as a matter of law that the 1999 memo fails to meet the elements of a contract. Condition Precedent {¶ 14} Salkin also argues that the trial court erred in regarding the 1999 memo as a condition precedent to the 1999-2000 reappointment contract and in finding it not binding in subsequent years. He argues that the 1999 memo manifested a mutual intent for him to teach five mutually agreeable courses per academic year, *Page 9 
and further, the "per academic year" language demonstrates that the agreement was intended to bind both parties for more than one year. Therefore, Salkin claims that the 1999 memo was a contract and not a condition precedent.
 {¶ 15} In Mumaw v. Western Southern Life Ins. Co. (1917),97 Ohio St. 1, 119 N.E. 132, the Ohio Supreme Court defined a condition precedent as a condition "* * * which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." Id. See also Troha v. Troha (1995),105 Ohio App.3d 327, 663 N.E.2d 1319.
 {¶ 16} During the annual faculty reappointment process, faculty members at CWRU are evaluated on teaching, research, and service. Salkin has participated in this annual faculty reappointment process for over thirty-five years. In 1999, during Salkin's reappointment for the 1999-2000 academic year, Dean Cameron decided to reduce Salkin's load to five courses so that Salkin could participate in a more significant service role at the university. Salkin acknowledged this in his 1999 memo. Thus, we find that the 1999 memo was a condition precedent only for the existing employment contract for the 1999-2000 academic year.
 Implied Contract *Page 10 {¶ 17} Salkin further argues that the trial court erred in finding that no agreement could be implied in the presence of the annual appointment contract. Salkin contends that if the 1999 memo is not an express contract, then it is enforceable under an implied contract theory.
 {¶ 18} An implied contract exists when "* * * the terms of the contract are not expressed between the contracting parties, but the obligations of natural justice, by reason of some legal liability, impose the payment of money or the performance of some duty, and raise a promise to that effect." Northern Columbiana City Community Hosp. Assn.v. Ohio Dept. of Youth Services (1988), 38 Ohio St.3d 102, 104, quotingLinn v. Ross Co. (1841), 10 Ohio 412, 414. Moreover, an implied contract's formation is determined by showing that the circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended. Lucas v. Costantini (1983), 13 Ohio App.3d 367,369. See also Cuyahoga County Hospitals v. Price, et al. (Dec. 14, 1989), Cuyahoga App. No. 56395.
 {¶ 19} In the instant case, Salkin contends that because the annual faculty reappointment contracts do not set forth all of the terms of his employment, the terms should be implied into the employment contract from extrinsic sources, such as the 1999 memo. Salkin relies onRehor v. Case Western Reserve University (1975), 43 Ohio St.2d 224,331 N.E.2d 416, to support his position. *Page 11 
 {¶ 20} Salkin's argument is misplaced. It is generally recognized that an express contract and an implied contract cannot coexist with reference to the same subject matter. Hughes v. Oberholtzer (1954),162 Ohio St. 330, 123 N.E.2d 393; Creighton v. The City of Toledo (1869),18 Ohio St. 447. Under Rehor, the Ohio Supreme Court held that:
 "Where a university faculty member is employed, using standard reappointment forms which do not set forth in full the terms and conditions of employment, the university's employment policies, rules and regulations become part of the employment contract between the university and the faculty member." Id., supra at paragraph one of the syllabus.
Accordingly, under Rehor, the terms of CWRU's policies, rules, and regulations are a part of Salkin's employment contract. Because Salkin is subject to the terms of his express employment contract with CWRU, Salkin's implied contract claim fails as a matter of law.
 Promissory Estoppel {¶ 21} Salkin also argues that the trial court erred in holding that he could not have relied on the 1999 memo in renegotiating the terms of subsequent reappointments. He contends that CWRU is estopped from breaching the terms of the 1999 memo. He claims that a promise was made to him that he would teach only mutually agreeable courses. He relied on this promise by continuing to work with CWRU. He further argues that it was reasonable and foreseeable that he would rely on the agreement. He claims he was injured by relying on the contract and by *Page 12 
being forced to teach a course not "mutually agreeable." Subsequently, he claims that he suffered by receiving "lower salary raises."
 {¶ 22} In the employment context, a successful claim for promissory estoppel requires a showing that "the employer should have reasonably expected its representation to be relied upon by its employee and * * * [that] the expected action or forbearance actually resulted and was detrimental to the employee." Danko v. MBIS Inc. DBA MB Dynamics (Sept. 28, 1995), Cuyahoga App. No. 68131, citing Kelly v. Georgia-PacificCorp. (1989), 46 Ohio St.3d 134, 545 N.E.2d 124.
 {¶ 23} Moreover, in Cohen Company v. Messina (1985),24 Ohio App.3d 22, 492 N.E.2d 867, this court identified the following elements necessary for the application of the promissory estoppel doctrine: (1) there must be a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance.
 {¶ 24} In the instant case, Salkin fails to prove the elements of promissory estoppel. He failed to establish a clear and unambiguous promise because the record demonstrates that the Dean of Weatherhead has the ultimate authority to determine a professor's course assignments. Salkin also failed to demonstrate reasonable and foreseeable reliance. The record established that Salkin negotiated the terms of his teaching assignments each year for over thirty-five years as part of *Page 13 
the annual reappointment process. Therefore, he failed to establish a reasonable or foreseeable reliance that the 1999 memo would be binding for future years with future Deans. Lastly, Salkin failed to demonstrate injury by reliance. He testified that his reputation has not been damaged and that he has not looked for another job. The record also established that he received full salary and benefits, including a raise. Therefore, Salkin's promissory estoppel claim fails as a matter of law.
 {¶ 25} Accordingly, Salkin's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, PRESIDING JUDGE
 PATRICIA ANN BLACKMON, J. and MARY J. BOYLE, J. CONCUR *Page 1