[Cite as *Thompson v. Custer*, 2014-Ohio-5711.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| EDWARD J. THOMPSON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2014-T-0052** |
| NATHAN J. CUSTER, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2013 CV 2358.

Judgment: Affirmed.

*Michael D. Rossi*, Guarnieri & Secrest, P.L.L., 151 East Market Street, P.O. Box 4270, Warren, OH 44482; *Marty Nosich*, The Law Offices of Bishop & Nosich, L.L.C., 143 West Main Street, Cortland, OH 44410 (For Plaintiffs-Appellants).

*Matthew W. Onest*, *Gregory W. Watts,* and *William G. Williams*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 4775 Munson Street, N.W., P.O. Box 36963, Canton, OH 44735-6963 (For Defendants-Appellees Nathan J. Custer and Noelle M. Custer).

*Peter A. Lusenhop*, Vorys, Sater, Seymour and Pease, LLP, 52 East Gay Street, P.O. Box 1008, Columbus, OH 43215; *Steven A. Chang*, Vorys, Sater, Seymour and Pease, LLP, 106 South Main Street, Suite 1100, Akron, OH 44308 (For Defendant-Appellee BP America Production Co.).

*Mike DeWine*, Ohio Attorney General, *Daniel J. Martin* and *Jennifer A. Barrett*, Assistant Attorneys General, Environmental Enforcement Section, 2045 Morse Road, Suite C-2, Columbus, OH 43229-6693 (For Defendant-Appellee Mike DeWine).

TIMOTHY P. CANNON, P.J.

{¶1} Appellants, Edward J. Thompson, Ann Hall Thompson, and Mae Thompson Baxter, appeal the summary judgment granted by the Trumbull County Court of Common Pleas in favor of appellees, Nathan J. and Noelle M. Custer. The trial court found the "Custers [Defendant-Appellees] are the rightful owners of all the mineral rights to the subject parcels of land" and "rejected in their entirety" appellants' arguments that former R.C. 5301.56, entitled "abandonment of mineral interest and vesting in owner of surface of lands," is unconstitutional. Based on the following, we affirm.

{¶2} The Custers are the current surface owners of 98.963 acres in Vernon Township, Trumbull County, Ohio (hereinafter referred to as "Real Estate"). On April 11, 2012, the Custers entered into an oil and gas lease with BP America Production Company ("BP") for the Mineral Interests. A Memorandum of Oil and Gas Lease pertaining to the Custer Lease was recorded.

{¶3} Appellants, however, claimed to possess a one-half interest in the mineral interests by virtue of their status as the living heirs of the prior owners of the Real Estate who reserved a one-half interest in the mineral interests by a deed recorded on March 22, 1950. Appellants attempted to lease the reserved mineral interests to BP in October 2012. Thereafter, appellants filed a "Notice of Claim to Preserve Mineral Interest" with the Trumbull County Recorder on March 25, 2013.

{¶4} In December 2013, appellants filed a two count complaint, requesting: (1) a declaratory judgment that the oil and gas reservation had not been abandoned and (2) a declaratory judgment that the 1989 Ohio Dormant Mineral Act is unconstitutional.

2

{¶5} The parties submitted summary judgment motions. The trial court granted the motion for summary judgment filed by the Custers, stating:

> The Custers are the rightful owners of all of the mineral rights to the subject parcels of land and any lease they may execute with BP is not affected by any of the Plaintiffs' claims. * * *
>
> The Court has also reviewed all of the arguments made by the Plaintiffs concerning the constitutionality of the 1989 DMA. The Plaintiffs' arguments that said statute was unconstitutional are hereby rejected in their entirety. As stated before, the Plaintiffs had three years to create a savings event, including filing a claim to preserve their interest, and they failed to do so. The 2006 version of the statute does not revive a claim that was already abandoned and vested in the 1992 surface owners of the property (predecessors in title to the Defendants).

{¶6} Appellants filed a notice of appeal and assert the following assignment of error:

{¶7} "On the parties' cross-motions for summary judgment, the trial court erred in granting those of Defendants-Appellees and denying that of Plaintiffs-Appellants."

{¶8} Under the assigned error, appellants present this court with two questions:

> [1.] Whether the 1989 version of the Dormant Minerals Act impliedly required some form of implementation before finally settling the subsurface owners' and surface owners' competing mineral interests, either by recorded abandonment claim permitting the subsurface owner to challenge its validity or by appropriate court proceeding to confirm that abandonment.
>
> [2.] Whether R.C. 5301.56 (eff. 3/22/89) is unconstitutional, as an unlawful 'retroactive statute' under Ohio Const. Art. II, §28, because (a) the General Assembly expressly intended that it apply retroactively; and (b) as an impairment of vested property interests, it is substantive, not purely remedial in nature.

{¶9} We review a trial court's decision on a motion for summary judgment de novo. *Fed. Home Loan Mtge. Corp. v. Zuga*, 11th Dist. Trumbull No. 2012-T-0038, 2013-Ohio-2838, ¶13. Under Civil Rule 56(C), summary judgment is proper if:

3

> (1) No genuine issue as to any material fact remains to be litigated;
> (2) the moving party is entitled to judgment as a matter of law; and
> (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Id.* at ¶10, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10} The moving party bears the initial burden to demonstrate from the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, that there is no genuine issue of material fact to be resolved in the case. *Id.* at ¶12. "If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts which prove there remains a genuine issue to be litigated, pursuant to Civ.R. 56(E)." *Id.*, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶11} This case involves the application of the current and former version of R.C. 5301.56, known as Ohio's Dormant Mineral Act. Former R.C. 5301.56(B)(1), effective March 22, 1989, provided that a mineral interest held by one other than the surface owner "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the preceding 20 years. The six savings events permitted were: (i) the mineral interest was the subject of a title transaction that was filed or recorded in the recorder's office; (ii) there was actual production or withdrawal by the holder; (iii) the holder used the mineral interest for underground gas storage; (iv) a drilling or mining permit was issued to the holder; (v) a claim to preserve the mineral interest was filed; or (vi) a separately listed tax parcel number was created. *Id.* at (B)(1)(c).

4

{¶12} Former R.C. 5301.56(B)(2) provided the following grace period: "A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section."

{¶13} The current version of R.C. 5301.56, effective June 30, 2006, removed the automatic abandonment of the mineral interest held by one other than a surface owner and enacted a statutory notice mechanism to which the surface owner must adhere. Current R.C. 5301.56 requires a surface owner to provide notice to the holder of the mineral interest of the intent to have the severed mineral interest declared abandoned and of the mechanism by which a subsurface owner could oppose this notice. *See* R.C. 5301.56(E)-(H). R.C. 5301.56 now provides, in pertinent part:

> (B) Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the following applies:
>
> (1) The mineral interest is in coal, or in mining or other rights pertinent to or exercisable in connection with an interest in coal * * *.
>
> (2) The mineral interest is held by the United States, this state, or any political subdivision, body politic, or agency of the United States or this state * * *.
>
> (3) Within the twenty years immediately preceding the date on which notice is served or published under division (E) of this section, one or more of the following has occurred:
>
> (a) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.
>
> (b) There has been actual production or withdrawal of minerals by the holder * * *.

5

(c) The mineral interest has been used in underground gas storage operations by the holder.

(d) A drilling or mining permit has been issued to the holder * * *.

(e) A claim to preserve the mineral interest has been filed in accordance with division (C) of this section.

(f) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

* * *

(E) Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:

(1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

(2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

{¶14} Appellants assert the 2006 version of the statute controls abandonment because the Custers first asserted abandonment *after* 2006. Appellants maintain they committed the following two "savings events" under current R.C. 5301.56(B)(3)(a): (1) the October 25, 2012 record filing of the Memorandum of Lease with BP, and (2) the

6

Notice of Claim to Preserve Mineral Interest, filed March 25, 2013. Appellants concede that the first event to occur after the 1950 deed reservation of oil and gas interest was the October 2012 recording of the Memorandum of Lease with BP.

{¶15} Conversely, the Custers assert the 1989 version of the Dormant Mineral Act controls. The Custers maintain that because appellants have failed to identify any savings event to preserve their mineral interest in the property from March 22, 1969, to March 22, 1992, the three-year grace period after the 1989 effective date, abandonment applies, and the mineral interests passed to them upon their acquisition of the Real Estate.

{¶16} To support their argument, appellants cite to two trial court opinions, namely *Dahlgren v. Brown Farms Properties*, Carroll C.P. No. 13-CVH-27445 (Nov. 5, 2013), and *M & H Partnership v. Hines*, Harrison C.P. No. CVH-2012-0059 (Jan. 14, 2014). In *Dahlgren* and *Hines*, the trial courts determined that because no one asserted or sought to enforce an abandonment claim while the 1989 version was in effect, the 2006 version controls. The trial court in *Dahlgren* classified the mineral rights under the 1989 version as "inchoate" rights. The trial court in *Dahlgren* reasoned:

> After careful consideration, this Court agrees with the holders of the subsurface mineral rights. Without any contrary statutory language, this Court concludes that the 1989 version impliedly required implementation before it finally settled the parties' rights, at least by a recorded abandonment claim that permitted the adverse party to challenge its validity, if not by an appropriate court proceeding to confirm that abandonment. Circumstances that support a claimed right do not by themselves provide a complete remedy. Absent any implementation or enforcement of claimed abandonment rights before the 2006 amendment, the landowner defendants must comply with the procedures which the 2006 amendment requires.

{¶17} The Seventh Appellate District, in *Walker v. Shondrick-Nau*, 7th Dist. Noble No. 13 NO 402, 2014-Ohio-1499, found "the *Dahlgren* court's characterization of the mineral rights under the 1989 version is contrary to the statute itself, which states that the mineral rights are 'vested.'" *Id*. at ¶43. In *Walker*, the court addressed whether the trial court erred in applying the 1989 version of R.C. 5301.56 and not the 2006 version. *Id*. at ¶30-52. The appellant, like those in this case, argued the 2006 version of the statute is applicable because it was the law in effect during the events that gave rise to the suit. *Id*. at ¶32. The appellant in *Walker* noted that the appellee did not purchase the disputed property until 2009 and, therefore, did not own the surface rights during the time the 1989 version of the statute was effective. *Id*. The *Walker* court recognized that "[n]o Ohio appellate court or the Ohio Supreme Court ha[d] yet to address the issue of when to apply the 1989 version of R.C. 53301.56 and when to apply the 2006 version." *Id*. at ¶35.

{¶18} The *Walker* court noted that the 1989 version of R.C. 5301.56 stated any mineral interest held by anyone other than the surface owner "shall be deemed abandoned and vested" in the surface owner if none of the savings events occurred. *Id*. at ¶38, quoting former R.C. 5301.56(B)(1). The court further recognized the 1989 version became effective on March 22, 1989, but provided a three-year grace period until March 22, 1992. "[O]n March 22, 1992, [the appellant's] mineral interest was 'deemed abandoned and vested' in the surface owner at the time." *Id*. at ¶39.

> Once the mineral interest vested in the surface owner, it was reunited with the surface estate. [The appellant] did not have any mineral interest in the subject property after March 22, 1992, because on that date the interest automatically vested in the surface owner by operation of the statute. And once the mineral

interest vested in the surface owner, it 'completely and definitely' belonged to the surface owner.

*Id.* at ¶41. *See also Swartz v. Householder*, 7th Dist. Jefferson Nos. 13 JE 24 & 13 JE 25, 2014-Ohio-2359, ¶39 ("As we held in *Walker*, the 1989 DMA can still be utilized for mineral interests that were deemed vested thereunder (and the current version could be used in the alternative for later acts of abandonment if the mineral holder demonstrated that there were savings events under the 1989 DMA)."); *Wendt v. Dickerson*, 5th Dist. Tuscarawas No. 2014 AP 01 0003, 2014-Ohio-4615, ¶37 ("[W]e are inclined to follow the persuasive authority of our colleagues in the Seventh District Court of Appeals to find the trial court correctly determined that the 1989 DMA applied and under the language of the 1989 DMA, the mineral rights automatically vested with the surface owners on March 22, 1992.").

{¶19} The Ohio Supreme Court accepted a discretionary jurisdictional appeal of *Walker* on the following applicable propositions of law:

> Proposition of Law No. I: The 2006 version of the DMA is the only version of the DMA to be applied after June 30, 2006, the effective date of said statute.
>
> Proposition of Law No. II: To establish a mineral interest as 'deemed abandoned' under the 1989 version of the DMA, the surface owner must have taken some action to establish abandonment prior to June 30, 2006. In all cases where a surface owner failed to take such action, only the 2006 version of the DMA can be used to obtain relief.
>
> Proposition of Law No. III: To the extent the 1989 version of the DMA remains applicable, the 20-year look-back period shall be calculated starting on the date a complaint is filed which first raises a claim under the 1989 version of the DMA.
>
> * * *

9

Proposition of Law No. V: Irrespective of the savings events in R.C. 5301.56(B)(3), the limitations in R.C. 5301.49 can separately bar a claim under the DMA.

Proposition of Law No. VI: The 2006 version of the DMA applies retroactively to severed mineral interests created prior to its effective date.

Memorandum in Support of Jurisdiction for Shondrick Nau, Case No. 2014-0803.

{¶20} Under the facts presented, the trial court did not err in its determination that the 1989 version of R.C. 5301.56 was applicable. "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48. Additionally, the reenactment, amendment or repeal of a statute does not affect "any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder." R.C. 1.58(A)(2).

{¶21} "There is no language in the 2006 version of R.C. 5301.56 to suggest that it is to be applied retroactively. Thus, it is only to apply prospectively. Additionally, although R.C. 5301.56 was amended in 2006, this amendment would not have affected any 'validation, cure, right, privilege, obligation, or liability previously acquired.'" *Walker*, *supra*, at ¶37.

{¶22} It is undisputed that after 1950, no action was taken with regard to the reserved mineral interest until the recording of the Memorandum of Lease with BP in October 2012. The plain language of the 1989 version of R.C. 5301.56 provided for automatic vesting of the mineral rights in the surface owner unless a "savings event" occurred within the preceding 20 years. *See* former R.C. 5301.56(B)(1)(c) (a mineral interest held by one other then the owner "*shall be deemed abandoned and vested* in the owner of the surface" if no savings event occurred within the preceding twenty years

10

(emphasis added)). Additionally, former R.C. 5301.56(B)(2) provided that a mineral interest shall not be deemed abandoned due to a lack of savings events until three years from the March 22, 1989 effective date of the act. Notably, there is no language in former R.C. 5301.56 that required a surface owner to affirmatively assert a claim to the subsurface rights. To the contrary, former R.C. 5301.56 required those who claimed a mineral interest to assert their interest by acting in accordance with one of the statutory saving provisions. *Id.* Former R.C. 5301.56 expressly stated that the mineral rights became abandoned and *vested* with the surface owner unless a savings event occurred within the applicable time period; "[a] vested right is a right fixed, settled, absolute, and not contingent upon anything." *Rehor v. Case Western Reserve Univ.*, 43 Ohio St.2d 224, 229 (1975). Once mineral rights vest with the surface property owner, those rights cannot be abrogated by a subsequent legislative act. Therefore, neither of appellants actions taken in 2012 and 2013 could revive their mineral interest because, pursuant to former R.C. 5301.56, any mineral interest in the property at issue automatically vested in the surface owner on March 22, 1992. *See Swartz, supra*, at ¶34 ("the 2006 DMA contains no language eliminating property rights that were previously expressly said to be vested[.]").

{¶23} Appellants next argue that former R.C. 5301.56(B)(1)(c) is an unconstitutional "retroactive statute" under the Retroactivity Clause of the Ohio Constitution, Article II, Section 28. Article II, Section 28 of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." Courts have interpreted the constitutional prohibition against retroactive laws to apply "to laws

11

affecting substantive rights but not to the procedural or remedial aspects of such laws." *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 137 (1988).

**{¶24}** A two-step standard is followed to decide whether the retroactive application of a statute will be deemed to violate the above referenced Retroactivity Clause. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶10 (citation omitted). Pursuant to the first prong of the "retroactive" test, the language of the statute is reviewed to determine whether the legislature expressly stated that retroactive application was intended. *Id.* If the wording of the General Assembly is sufficiently explicit to show a retroactive intent, the statute is then reviewed to determine if it affects a substantive or remedial matter. *Id.*

**{¶25}** Contrary to appellants' argument, former R.C. 5301.56(B)(1)(c) did not operate in a retroactive manner. Former R.C. 5301.56(B)(1)(c) provided mineral holders with a three-year grace period, from March 22, 1989, until March 22, 1992, to employ one of the enumerated "savings events." Although it looked back the preceding 20 years, former R.C. 5301.56(B)(1)(c) did not negate as a matter of law one's mineral interest upon its effective date.

**{¶26}** In *Texaco v. Short*, 454 U.S. 516 (1982), the Supreme Court of the United States was faced with several constitutional challenges to the state of Indiana's Mineral Lapse Act. The Act provided "that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner * * * files a statement of claim in the local county recorder's office." *Id.* at syllabus. Similar to former R.C. 5301.56(B)(1)(c), the Indiana statute contained a two-year grace period in which owners of mineral interests that were

12

then unused and subject to lapse could preserve those interests by filing a claim in the recorder's office. *Id.*

{¶27} Although in the context of a Taking Clause, the same reasoning and analysis applies in this matter. The *Texaco* Court stated:

> In this case, the 2-year grace period included in the Indiana statute forecloses any argument that the statute is invalid because mineral owners may not have had an opportunity to become familiar with its terms. It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property.

*Texaco*, *supra*, at 532.

{¶28} As former R.C. 5301.56(B)(1)(c) did not involve a retroactive application that would have stripped mineral rights owners of their rights upon its effective date, it is therefore constitutional.

{¶29} Appellants' assignment of error is without merit.

{¶30} The judgment of the Trumbull County Court of Common Pleas is hereby affirmed.

CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.

concur.

13