[Cite as *Swartz v. Householder*, 2014-Ohio-2359.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAN SWARTZ, et al., | ) | |
| | ) | CASE NO.    13 JE 24 |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JAY HOUSEHOLDER, SR., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

| | | |
|---|---|---|
| ERNEST SHANNON, et al., | ) | |
| | ) | CASE NO.    13 JE 25 |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JAY HOUSEHOLDER, SR., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court, Case Nos. 12CV328 (24); 12CV226 (25).

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiffs-Appellees:     Attorney Steven Shrock
Attorney Clinton Bailey
138 East Jackson Street
Millersburg, Ohio  44654

For Defendants-Appellants:     Attorney Brandon Cogswell
Attorney Robert Guehl
7925 Paragon Road
Dayton, Ohio  45459

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  June 2, 2014

VUKOVICH, J.

{¶1} The Householder appellants appeal two decisions from the Jefferson County Common Pleas Court granting summary judgment to the Shannon family and the Swartz family and thus finding the Householders' mineral interests had been abandoned. The main issue for our review is whether the 1989 Dormant Mineral Act (DMA) can still be utilized by surface owners with rights deemed vested under that statute or whether the 2006 amendments apply retroactively. We conclude that the 1989 DMA was self-executing and can still be relied upon. For the following reasons, the judgments of the trial court are affirmed.

STATEMENT OF THE SHANNON CASE

{¶2} Ernest and Shelda Shannon own 118 acres in Jefferson County. In seeking to reunite the minerals with the surface of their property, they published notice of their intent and then recorded a 2011 affidavit of abandonment. Jay Householder, Sr. recorded a claim to preserve as heir to the 1946 original property owners: Elva Lawrence, Alma Lawrence, Chelissa Swickard, and Jetta Householder. The latter two owners sold their shares to the Lawrence sisters in the 1950's, but their mineral rights were severed and reserved. It is those reserved mineral rights that are at issue here as the Lawrences' mineral rights were found to have been sold to the Shannons along with the surface (and that finding was not appealed).

{¶3} In 2012, the Shannons filed a complaint for a declaratory judgment and quiet title against the Householder appellants, seeking a declaration that the mineral interests under their property had been abandoned under the 1989 and 2006 Dormant Mineral Acts. The defendants counterclaimed for declaratory judgment and quiet title. A stipulation of facts was filed.

{¶4} The Shannons filed a motion for summary judgment, arguing in pertinent part that the defendants' mineral interest rights were extinguished by the self-executing 1989 DMA due to the lack of savings events. The Householder appellants responded that the 2006 DMA was to be applied retrospectively (and was remedial) and thus the 2006 amendments apply to cases filed after those amendments. The Shannons countered that the 2006 DMA does not apply

retroactively as it does not expressly so provide, and thus it does not undo what the 1989 DMA already provided by its automatic operation. They also noted that any attempt at retroactivity would have been unconstitutional as the 1989 DMA provided a substantive right.

**{¶5}** On July 17, 2013, the trial court granted summary judgment in favor of the Shannons. The court stated that the 1989 DMA was self-executing and the 2006 DMA was not expressly made retroactive as required by R.C. 1.48 and thus it was only to be applied prospectively. In applying the 1989 DMA, the court found no savings events and concluded that contested mineral interest had been abandoned. The Householders filed a timely notice of appeal, resulting in 13JE25.

<u>STATEMENT OF THE SWARTZ CASE</u>

**{¶6}** Dan and Donna Swartz own 72 acres in Jefferson County. The mineral interests for this property were originally severed in 1946 when the surface was sold by the same four original property owners as in the Shannon case. The Swartzes published notice of intent to declare the mineral interest abandoned in 2011, and Mr. Householder filed a claim to preserve. The Swartzes then filed a complaint for declaratory judgment, asserting that the mineral interest had been abandoned under the 1989 and 2006 Dormant Mineral Acts. Appellants counterclaimed for declaratory judgment and quiet title. A stipulation of facts was filed.

**{¶7}** A motion for summary judgment was filed by the Swartz family. In pertinent part, they argued automatic abandonment under the self-executing 1989 DMA. The Householders responded that the 2006 amendment was intended to be retroactive (and that said retroactivity is valid because the statute is remedial). They urged that any automatic abandonment under the 1989 DMA can no longer be declared. The Swartz family countered that the 2006 DMA does not expressly provide for retroactivity and thus does not undo the vested right that the 1989 DMA already provided by its automatic operation, noting that the legislature did not so provide because such a retroactive application would have been unconstitutional as the law provided a substantive right to the surface owner.

{¶8}   On July 17, 2013, the trial court granted summary judgment in favor of the Swartzes, finding no savings events under the 1989 DMA.  As in *Shannon*, the court stated that the 1989 DMA was self-executing upon the lack of a savings event. The Householders filed a timely notice of appeal, resulting in 13JE24.

## ASSIGNMENT OF ERROR

{¶9}   The Householders' two appeals were consolidated by this court.  The Householders' sole assignment of error alleges:

{¶10}   "The trial court erred in granting the Shannon Plaintiffs' and the Swartz Plaintiffs' Motion for Summary Judgment because it incorrectly applied the 1989 Dormant Mineral Act instead of the 2006 Dormant Mineral Act in holding that the Defendants['] mineral interest was automatically abandoned."

{¶11}  This assignment has three main arguments, which we have divided into three categories:   continued application of the 1989 DMA; constitutionality of the 1989 DMA; and factual application of the 2006 DMA.  With the exception of the final category, appellant's arguments on appeal involve across-the-board legal questions that do not rely on the particular facts of this case.   Before delving into the arguments, we outline the Dormant Mineral Acts.

## DORMANT MINERAL ACTS

{¶12}  The 1989 Dormant Mineral Act became effective on March 22, 1989 in R.C. 5301.56 as an addition to the Ohio Marketable Title Act, which is contained within R.C. 5301.47 through R.C. 5301.56.  The 1989 DMA provides that a mineral interest held by one other than the surface owner "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the preceding twenty years.  R.C. 5301.56(B)(1)(c) (unless the mineral interest is (a) in coal or (b) held by the government).  The six savings events are as follows:  (i) the mineral interest was the subject of a title transaction that has been filed or recorded in the recorder's office, (ii) there was actual production or withdrawal by the holder,  (iii) the holder used the mineral interest for underground gas storage; (iv) a mining permit has been issued to the holder; (v) a claim to preserve the mineral interest was filed;

or (vi) a separately listed tax parcel number was created.  R.C. 5301.56(B)(1)(c)(i)-(vi).

{¶13} The statute provided the following grace period:  "A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section."  R.C. 5301.56(B)(2).  There were no obligations placed upon the surface owner prior to the statutory abandonment and vesting.

{¶14} On June 30, 2006, amendments to the DMA became effective.  The three year grace period in (B)(2) was eliminated.  And now, the language in division (B), "shall be deemed abandoned and vested in the owner of the surface," operates only if none of the savings events apply **and** "if the requirements established in division (E) of this section are satisfied."  R.C. 5301.56(B).

{¶15} Now, "Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:"  (1) provide a specific notice; and (2) file a timely affidavit of abandonment with the county recorder.  R.C. 5301.56(E).  See R.C. 5301.56(E)(1) (notice by certified mail return receipt requested to each holder or each holder's successors or assignees, at the last known address, but if service of notice cannot be completed to any holder, then notice by publication), (E)(2) (affidavit of abandonment must be filed at least 30 but not later than 60 days after the date on which the notice is served or published), (F), (G) (specifying what the notice and affidavit must contain).

{¶16} The 2006 DMA also adds that a mineral holder who claims an interest has not been abandoned may file with the recorder:  (a) a claim to preserve or (b) an affidavit containing a savings event within 60 days after the notice of abandonment is served or published.  R.C. 5301.56(H)(1).  If no such timely document is recorded, then the surface owner "who is seeking to have the interest deemed abandoned and vested in the owner" shall file with the recorder a notice of the failure to file.  R.C. 5301.56(H)(2) (was called memorialization; changed to "notice of failure to file" on

January 31, 2014). "Immediately after" such recording, "the mineral interest shall vest in the owner of the surface * * *." *Id.*

CONTINUED APPLICATION OF 1989 DMA

**{¶17}** Appellants set forth various arguments in support of their allegation that the 1989 DMA is not applicable due to the enactment of the 2006 DMA. First, appellants note that our *Dodd* case did not discuss the 1989 DMA. However, the parties in that case did not present arguments to this court under the 1989 DMA. *See Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257. They only presented arguments concerning the 2006 DMA. If parties do not invoke a statute, we proceed under the impression that the parties agreed that said statute was not dispositive, i.e. if parties agree that there was no abandonment under the 1989 DMA, then they proceed under only the 2006 DMA. Thus, the lack of reference to the 1989 DMA in *Dodd* is not dispositive as to whether the 1989 DMA can still be used to assert vested rights.

**{¶18}** Appellants also briefly posit that the 1989 DMA conflicts with the Ohio Marketable Title Act, noting that the MTA has a 40 year period, deals with the chain of title, and instructs at R.C. 5301.55 that it "shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." *See also* R.C. 5301.49(A). Appellants essentially urge that the 1989 DMA should be ignored because allowing a mineral interest to be lost without a savings event during the applicable twenty-year period does not respect the purpose of the MTA.

**{¶19}** Appellees respond that the DMA is a specific addition to the OMTA with a clear legislative intent to have stale, unused mineral interests deemed abandoned, explaining that it does assist in facilitating land transaction by extinguishing old claims. The DMA is part of the MTA, with the 1989 DMA being added as R.C. 5301.56. The provision cited by appellants in R.C. 5301.55, regarding liberally construing the MTA to facilitate land transactions expressly speaks of the construction of R.C. 5301.47 through R.C. 5301.56, inclusive. As aforementioned, that last statute mentioned, R.C. 5301.56, is the DMA.

**{¶20}** Appellants do not sufficiently explain why the specific and later language of the DMA would not apply over the general language of the MTA and do not discuss R.C. 1.51. Pursuant to R.C. 1.51, if a general provision conflicts with a special provision, they shall be construed if possible by giving effect to both, and if the conflict is irreconcilable, the special prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail. *See also Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 26-33. Here, the DMA is more specific, it was enacted later, and the legislative intent is clearly to reattach mineral interests back to the surface under a twenty-year look back.

**{¶21}** Moreover, on the topic of whether the 1989 DMA could be utilized, appellants argued to the trial court that the 2006 DMA was retroactive (and remedial). They did not mention any conflict with the MTA. Thus, we need not further review this argument for the first time on appeal. *See, e.g, Litva v. Richmond*, 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, ¶ 18 (7th Dist.).

**{¶22}** Appellants also briefly urge that the 1989 DMA was invalid due to the lack of specific implementation provisions; in other words, it attempted to create a right but forgot to provide a remedy. However, clearly a court action, such as a declaratory judgment or quiet title action to formalize the statutory vesting, already legally existed as a matter of course, i.e. a statute need not explain to the reader how they can file a court action to have their rights declared. In any event, appellants did not make this claim below and thus waived the argument for purposes of appeal. *See id.*

**{¶23}** Next, appellants propose that in order to use the 1989 DMA, the surface owners must have implemented the act prior to the 2006 amendments, such as by recording an affidavit of abandonment or filing a court proceeding for quiet title. Appellants conclude that because there were no specific statutory steps provided in order to implement the rights granted by the 1989 DMA, then surface owners who waited to formalize their rights are bound by the 2006 DMA, citing *Dahlgren v. Brown Farm Props.*, LLC, Carroll C.P. No. 13CV27 (Nov. 5, 2013 J.E.) (holding that 1989

DMA created inchoate right and the failure to seek judicial confirmation or record a cloud that the mineral holder could contest prior to the 2006 amendments destroyed right to assert that the mineral interest vested in the surface owner automatically). Appellants conclude that the 2006 DMA is the only remedy left, thus basically continuing their argument from below that the 2006 DMA applies retroactive. Again, the position appellants espoused below regarding which act to apply was that the 2006 amendments apply retrospectively (and that this was permissible because it only affected remedial as opposed to substantive rights[1]).

{¶24} Appellees respond that the mineral interest here was deemed abandoned and vested in the surface owner under the self-executing 1989 DMA long before the 2006 DMA was enacted and that the 2006 did not undo prior abandonments. Appellees point to the United States Supreme Court's holding in *Texaco*, which emphasized the difference between the self-executing feature of a dormant mineral act and subsequent judicial determination that a lapse did in fact occur. *See Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). Appellees disagree with the holding of the trial court in *Dahlgren*, urging that said court added language to the act by holding that the 1989 DMA "impliedly required implementation" by court proceeding or at least by a recorded affidavit of abandonment in order to turn what the court termed an "inchoate" right into a vested right. Appellees emphasize that the obligation to act was *on the mineral interest holder* in order to avoid automatic abandonment and vesting and there was no obligation imposed upon the surface owner under the 1989 DMA. Appellees insist that the requirements of the 2006 DMA only apply prospectively to new abandonments as it was not expressly made retrospective (and suggest the

---

[1]The latter argument was apparently made in contemplation of a contention that retrospective application of the 2006 DMA would be unconstitutional as the test for determining an unconstitutionally retroactive law involves a determination of whether it is in fact retrospective and then whether it affects merely remedial as opposed to substantive rights. *See* Ohio Constitution, Article II, Section 28 ("The General Assembly shall have no power to pass retroactive laws * * *."). *See also Bartol v. Eckert*, 50 Ohio St.31, 33 N.E. 294 (1893) (if there is an expression of retrospective intent in the statute, it will be considered constitutional only if it affects merely remedial, as opposed to substantive, rights). However, if a law applies only prospectively, there is no second step. *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 14.

legislature did not make it retrospective as said application would have affected substantive as opposed to remedial rights.)

**{¶25}** Pursuant to the 1989 DMA, a mineral interest held by a person other than the surface owner of the land subject to the interest "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the preceding twenty years. Former R.C. 5301.56(B)(1)(c) (unless the mineral interest is (a) in coal or (b) held by the government). *See also* Former R.C. 5301.56(B)(2) (a mineral interest shall not be "deemed abandoned" due to lack of savings events until three years from the March 22, 1989 effective date of the act).

**{¶26}** By way of comparison, the 2006 DMA provides that the mineral interest will not become vested until the surface owner serves or publishes (if applicable) the notice of abandonment on each holder and then at least, thirty but not more than sixty days thereafter, records an affidavit of abandonment. R.C. 5301.56(E)(1)-(2). If the mineral holder fails to respond with one or two timely documents, the surface owner shall cause a memorialization of the abandonment to be recorded at which time the mineral interest shall vest in the surface owner. R.C. 5301.56(H)(2).

**{¶27}** The 1989 DMA is the type of statute characterized by automatic lapsing and reversion to the surface owner known as a self-executing statute. See *Texaco*, 454 U.S. 516. The United States Supreme Court stated that Indiana's DMA was self-executing as it provided the mineral interest shall be extinguished and the ownership shall revest upon the non-occurrence of savings events within the pertinent time period. *Id.* (and stating that notice to avoid automatic abandonment besides the statutory two-year grace period was not required and the only required notice involved the ability to prove a savings event in fact occurred in the pertinent period).

**{¶28}** In our recent *Walker* case, the appellant presented arguments to this court paralleling those outlined above regarding the inability to continue to apply the 1989 DMA. We concluded that the 1989 DMA can still be used after the 2006 DMA amendments because the prior statute was self-executing and the lapsed right automatically vested in the surface owner. *See Walker v. Shondrick-Nau, Executrix*

*of Estate of Noon*, 7th Dist. No. 13NO402, 2014-Ohio-1499 (fka *Walker v. Noon*). We maintain that holding and reiterate the rationale here.

**{¶29}** A vested interest can be a property right created by statute; it so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent. *See id.* at ¶ 40, quoting *State ex rel. Jordan v. Industrial Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9. Again, the 1989 DMA, with its three-year grace period, specifies that the mineral interest is deemed abandoned and the surface owner obtains a vested right if any of the listed circumstances apply, none of which are disputed on appeal here. *See* Former R.C. 5301.56(B)(1).

**{¶30}** Pursuant to R.C. 1.58(A), the reenactment, amendment, or repeal of a statute does not affect the prior operation of the statute or any prior action taken thereunder. R.C. 1.58(A)(1). In addition, the reenactment, amendment, or repeal of a statute does not affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder. R.C. 1.58(A)(2). Plus, the reenactment, amendment, or repeal of a statute does not affect any proceeding or remedy in respect of any such privilege, obligation, or liability and the proceeding or remedy may be instituted, continued, or enforced as if the statute had not been repealed or amended. R.C. 1.58(A)(4).

**{¶31}** Furthermore, "[a] statute is presumed prospective in its application unless expressly made retrospective." R.C. 1.48. *See also State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, fn. 2 (not retroactive because legislature did not specify that statute applied retrospectively and no indication that law was clarification as opposed to modification); *Bartol v. Eckert*, 50 Ohio St.31, 33 N.E. 294 (1893); *Walker*, 7th Dist. No. 13NO402 at ¶ 36. In accordance, a statute must "specifically indicate" that it applies retroactively or it will be implemented as applying only prospectively. *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 15 (to overcome the presumption that it applies only prospectively, the legislature must "clearly proclaim" the retroactive application). *See also Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625,

849 N.E.2d 268, ¶ 40 (if a statute is silent on intent to apply retrospectively, then it applies only prospectively).

**{¶32}** This means that the statute to be applied is the one existing at the time the cause of action accrued unless the new statute existing at the time the suit was filed enunciates that it applies to causes of action that accrued prior to the effective date. *See, e.g., id.*; *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 179, 183 (where new statute clearly said that it applied to suits filed after its effective date, it had retroactive application to injuries that occurred prior to enactment). *See also Walker*, 7th Dist. No. 13NO402 at ¶45-50, reviewing *Cadles of Grassy Meadows, II, LLC v. Kistner*, 6th Dist. No. L-09-1267, 2010-Ohio-2251.

**{¶33}** Comparably, the Sixth District has concluded that a new statute of limitations for revivor of judgments (shortening time for such action) did not apply to judgments that became dormant prior to enactment where that new statute of limitations contained no clear expression of retrospective application. *Kistner*, 6th Dist. No. L-09-1267 at ¶ 17. That court concluded that the new statute of limitations for reviving dormant judgments does not apply to dormant judgments that existed prior to the effective date of the amendment, even though the statute was enacted before the revival action was filed. *Id.*

**{¶34}** The theory is thus: when the 2006 version was enacted, any mineral interest that was abandoned under the 1989 version stayed abandoned and continued to be vested in the surface owner, and once the mineral interest vested in the surface owner, it reunited with the surface estate pursuant to statute regardless of whether the event has yet to be formalized. *See Walker*, 7th Dist. No. 13NO402 at ¶ 41. Additionally, the 2006 DMA contains no language eliminating property rights that were previously expressly said to be vested, i.e. it contains no statement that its new requirements for surface owners and the new rights for mineral holders apply retrospectively.[2] *See id.* at ¶ 51. Without express language eliminating the prior

---

[2]Although not argued, we note that a look-back period (which already existed under the old statute) does not implicitly make a statute retroactive. The notice of abandonment is the new trigger

automatic abandonment and vesting of rights under the old act, the amendments do not affect causes already existing (regardless of whether a suit is filed before or after the amendments).  *See id.*

**{¶35}** In fact, by stating, "Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface subject to the interest shall do both of the following * * *," the 2006 language shows that it deals with rights that are not yet vested (that is to say, mineral interests that have not yet been deemed abandoned).  *See* R.C. 5301.56(E).  The current DMA thus eliminated the automatic vesting after June 30, 2006, but did not erase previously vested interests (merely because a suit had not yet been filed to formalize the reverter).

**{¶36}** To some, the result reached by the trial court in *Dahlgren* may seem fair, equitable, and practical under a theory that it is the initial forfeiture that should be abhorred by the law rather than the later forfeiture of a property right obtained by forfeiture in the first place.  However, legislatures around the country found such initial abandonment and unification with the surface to be important to the state, and the United States Supreme Court agreed that the state has such legitimate interests.

**{¶37}** It is as if *Dahlgren* construed the amendments to be a type of implied statute of limitations for asserting rights granted under the 1989 DMA.  Essentially, *Dahlgren* found that a vested right was eliminated by a non-retrospective statutory amendment (an amendment with no grace period unlike the 1989 DMA).  *Dahlgren* concluded that the lack of savings events at most created an inchoate right because judicial action would be required in order to officially transfer ownership on the records (or a recording of a disputed title so the mineral owner could contest the dispute).

**{¶38}** Yet, the terms "inchoate" and "vested" are generally opposites.  *See, e.g., Bauman v. Hogue*, 160 Ohio St. 296, 301, 116 N.E.2d 439 (1953); *Walker*, 7th

---

for the look-back, which item can only apply prospectively because one could not file a notice of abandonment with the 2006 DMA statutory effects before it was even created.  In other words, the new DMA instituted *a new look-back initiator* (the notice of abandonment) to be employed prospectively in the future.

Dist. No. 13NO402 at ¶ 43. An inchoate right is a right that *has not fully* developed, matured, *or vested.* Black's Law Dictionary (9th Ed.2009) (online). We conclude that it is contrary to the plain language of the statute to hold that the surface owner's right to the abandoned mineral interests are inchoate even though the statute expressly stated that the right vested upon the lack of a savings event within the pertinent time period. Finally, we note that *Dahlgren* expressed concern about the opportunity to contest abandonment without recognizing that the very suit before it was the opportunity to so contest (that there were savings events in the pertinent time period).

**{¶39}** As we held in *Walker*, the 1989 DMA can still be utilized for mineral interests that were deemed vested thereunder (and the current version could be used in the alternative for later acts of abandonment if the mineral holder demonstrated that there were savings events under the 1989 DMA). Thus, the trial court did not err in utilizing the 1989 DMA.

<u>CONSTITUTIONALITY</u>

**{¶40}** Appellants assert that the 1989 DMA imposes forfeiture without due process and violates Ohio Constitution, Article I, Section 19, which provides: "Private property shall ever be held inviolate." They recognize the significance of the United States Supreme Court's *Texaco* holding but refer to the discussion of the importance of notice therein and the statements of the dissent in that case. Appellants conclude by noting that a state court can find a statute unconstitutional under the state constitution even if it is constitutional under the federal constitution.

**{¶41}** In *Texaco*, the Supreme Court held that Indiana's DMA was not unconstitutional as a state may treat as abandoned a mineral interest that has not been used for twenty years and for which no statement of claim has been filed, and thus, a mineral holder can validly lose his interest without advance notice from the surface owner. *Texaco*, 454 U.S. 516 (no unconstitutional taking, no due process violation, and no impairment of contract). The Court noted that a state surely has the power to condition the ownership of mineral rights on compliance with conditions in the DMA that impose such a slight burden on the owner while providing such clear and legitimate benefits to the state. *Id.* at 529-530. It was said to be the mineral

holder's failure to make use of the minerals or otherwise follow the statutory preservation option before the twenty-year period or the end of the two-year grace period, rather than the state's action, that caused the lapse of the property right. *Id.* at 529-531 (requirement that owner of mineral interest unused for 20 years must come forward and file a current statement of claim is not a taking).

**{¶42}** The Indiana DMA's two year grace period foreclosed any argument that the statute was invalid because mineral owners may not have had an opportunity to become familiar with the requirements. *Id.* at 532. ("It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property."). The Court also explained that the holders have no constitutional right to receive individual notice that their rights will expire, and the only notice required was that prior to formal deprivation where the holder could attempt to prove that there was in fact a prior savings event. *Id.* at 532-534. Notably, Ohio's 1989 DMA provided notice of three years within which the mineral owners could save their interest before any abandonment would vest.

**{¶43}** As appellees emphasize, appellants did not raise the constitutionality of the statute below.[3] Thus, the issue has been waived for purposes of appeal. *See, e.g., Abraham v. National City Bank Corp.*, 50 Ohio St.3d 175, 176, 553 N.E.2d 619 (1990), fn. 1 (agreeing with appellate court that argument regarding constitutionality of statute was waived because it was not raised below). *See also Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 598, 653 N.E.2d 646 (1995). And, we cannot conclude that the trial court committed plain error by failing to sua sponte consider whether the statute was constitutional. *See Walker*, 7th Dist. No. 13NO402 at ¶ 57 (refusing to address constitutional argument

---

[3]*See* Swartz file: Answer & Counterclaim; Defendant's Motion for Summary Judgment; Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 9-12; Defendant's Reply at 4. *See also Shannon* file: Answer and Counterclaim; Defendant's Motion for Summary Judgment; Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 9-12, 14; Defendant's Reply at 2-3. In fact, Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at page 11 in the *Shannon* case, while arguing that the 2006

concerning 1989 DMA where it was not raised in summary judgment stage), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus (plain error is recognized in a civil case only in an extremely rare case involving exceptional circumstances where the unobjected to error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself).

**{¶44}** Moreover, this is a declaratory judgment action and a declaratory judgment counterclaim, but appellants did not notify the attorney general of the constitutional challenge to the 1989 DMA as required in declaratory judgment actions. R.C. 2721.12 (if any statute * * * is alleged to be unconstitutional, the attorney general also shall be served with a copy of the complaint in the action or proceeding and shall be heard."); *Cicco v. Stockmaster*, 89 Ohio St.3d 95, 98-100, 728 N.E.2d 1066 (2000) (reiterating that this requirement is jurisdictional and finding a problem even where the attorney general was given copy of the summary judgment motion where constitutionality was first raised); *Malloy v. Westlake*, 52 Ohio St.2d 103, 105-107, 370 N.E.2d 457 (1977). Therefore, appellant's constitutionality arguments shall not be further addressed by this court.

NOTICE AND CLAIM TO PRESERVE

**{¶45}** Lastly, appellants briefly raise two arguments under the 2006 DMA, which they presented in their cross-motions for summary judgment. Appellants assert that the notice provided by appellees violated the 2006 DMA as there was only notice by publication and no certified mailing. *See* R.C. 5301.56(E)(1). Appellants also state that they filed timely claims to preserve under the 2006 DMA, one timely on its face and the other timely because of the claimed notice issue. *See* R.C. 5301.56(H)(1). They point out that a claim to preserve is akin to a savings event under the 2006 DMA. *See Dodd v. Croskey*, 7th Dist. No. 12HA6, 2013-Ohio-4257, ¶ 17-36.

---

rather than the 1989 DMA applies, specifically states: "The *Texaco* case only establishes that Ohio's 1989 Dormant Mineral Act was constitutional."

**{¶46}** Initially, we point out that these issues were never reached by the trial court as that court found abandonment under the 1989 DMA, which the trial court specifically found was determinative when it refused to rule on these matters. Thus, these issues would not be ripe for our review as they were not reached during the summary judgment stage below. *See, e.g., Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 88-89, 585 N.E.2d 384, 389-390 (1992), fn. 5 (where the trial court declined to consider the first argument raised in the motion for summary judgment, but granted the motion for summary judgment solely on the basis of another argument, the first argument was not properly before the court of appeals); *Crites v. Anthem Life Ins. Co.*, 3d Dist. No. 4-12-21, 2013-Ohio-2145, ¶ 8; *Farley v. Chamberlain*, 4th Dist. No. 03CA48, 2004-Ohio-2771, ¶ 12 (refusal to usurp trial court's function). *See also Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992) (fact that appellate court has de novo summary judgment review does not mean that trial court need not first rule on issues presented in motions).

**{¶47}** In any event, these 2006 DMA arguments were only presented for our review if we first concluded that the 1989 DMA was inapplicable. As we have found that the self-executing 1989 DMA can still be utilized to show abandonment, these conditional arguments are moot.

**{¶48}** For the foregoing reasons, the judgments of the trial court are affirmed.


Donofrio, J., concurs.
Waite, J., concurs.