[Cite as *Wendt v. Dckerson*, 2014-Ohio-4615.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER WENDT, ET AL. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellees | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2014 AP 01 0003 |
| | : | |
| JUDITH DICKERSON, ET AL. | : | |
| | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2012
CV 02 0135


JUDGMENT: AFFIRMED


DATE OF JUDGMENT ENTRY: October 16, 2014


APPEARANCES:

For Plaintiffs-Appellees: For Defendants-Appellants:

DAVID E. BUTZ PAUL HERVEY
MATTHEW W. ONEST JILLIANN A. DAISHER
Krugliak, Wilkins, Griffifths, & Dougherty Fitzpatrick, Zimmerman & Rose Co.,
Co., LPA L.P.A.
4775 Munson St., NW P.O. Box 1014
P.O. Box 36963 New Philadelphia, OH 44663
Canton, OH 44735-6963

*Delaney, J.*

{¶1}   Defendants-Appellants Judith Dickerson, Mary Louise Foster, Elaine F. Harris, Claire M. Dickerson, Richard H. Dickerson, Robert J. Dickerson, Raymond Dickerson, Constance Clark, Deborah Snelson, Misty Engstrom, Ronald K. Dickerson, John L. Dickerson, and Wanda Dickerson ("the Dickersons") appeal the February 21, 2013 and January 15, 2014 judgment entries of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

{¶2}   In 1928, John R. Dickerson obtained full ownership interest in approximately 82 acres of real property located in Section 20 of Cadiz Township, Harrison County, Ohio ("the Property"). Approximately four years later, John R. Dickerson transferred one-half of the Property to his wife, Marjorie I. Dickerson. John and Marjorie Dickerson were divorced prior to the transfer. On December 17, 1952, John and Marjorie Dickerson jointly transferred their interest in the Property to the Pittsburgh Consolidated Coal Company via a warranty deed; however, John and Marjorie Dickerson each retained a one-half interest in all of the oil and gas and the rights to drill and/or explore said oil and gas associated with the Property. John and Marjorie Dickerson transferred the rights to the Property's surface, coal, and all other non-oil and gas minerals. Pursuant to the 1952 transaction, the mineral rights were severed from the surface estate.

{¶3}   John R. Dickerson passed away on September 7, 1976. His mineral rights to the Property were not included in his estate. Marjorie I. Dickerson passed away on August 24, 1994. Her estate was not probated at the time of her death. Judith

Dickerson, Mary Louise Foster, Elaine F. Harris, Claire M. Dickerson, Richard H. Dickerson, Robert J. Dickerson, Raymond Dickerson, Constance Clark, Deborah Snelson, Misty Engstrom, Ronald K. Dickerson, John L. Dickerson, and Wanda Dickerson ("the Dickersons") are the sole heirs of John R. Dickerson and Marjorie I. Dickerson.

{¶4} Pittsburgh Consolidated Coal Company strip-mined and reclaimed the property. In 1997, Pittsburgh Consolidated Coal Company sold the Property to Neil Porter via a limited warranty deed. In 2006, Neil Porter sold the Property to Plaintiffs-Appellees Christopher and Veronica Wendt ("the Wendts") via a survivorship deed. The deed to the property was recorded on April 21, 2006. The deed was subject to the reservation by "John R. Dickerson and Marjorie I. Dickerson, their heirs and assigns for all of the oil and gas with the right to drill for in Warranty Deed filed for record December 17, 1952 in Volume 133, page 69, Deed Records."

{¶5} From 1952 to 2011, the Dickersons took no action related to their mineral rights to the Property.

{¶6} In 2011, the Dickersons began enforcing their inherited mineral rights to the Property. The Dickersons gave John L. Dickerson a power of attorney to deal with the inherited mineral rights on behalf of all the Dickerson heirs. On February 28, 2011, the Dickersons recorded two documents with the Harrison County Recorder's Office, each entitled "Affidavit for Transfer of Real Estate Inherited." In May 2011, the Dickersons signed a lease with Chesapeake Exploration LLC for the mineral rights to the Property. The lease was recorded by Chesapeake on November 2, 2011.

{¶7}   During 2011, the Wendts also sought to lease their mineral rights to the Property. The Wendts signed a mineral lease with Chesapeake in the spring of 2011. The lease failed because of the Dickersons' potential interest in the mineral rights.

{¶8}   On October 11, 2011, the Wendts published a notification of abandonment in a local newspaper pursuant to R.C. 5301.56. On October 21, 2011, the Wendts recorded an Affidavit of Abandonment with the Harrison County Recorder's Office. The Affidavit asserted the Wendts owned all the oil and gas rights by the automatic operation of R.C. 5301.56.

{¶9}   The Wendts executed a second lease with Chesapeake on October 31, 2011, but the lease was terminated due to the conflict in the mineral rights.

{¶10} On December 9, 2011, the Dickersons recorded a "Claims to Preserve Mineral Interest regarding any mineral interests inherited from Marjorie Dickerson and to Preserve Mineral Interest regarding any mineral interests inherited from John Dickerson" with the Harrison County Recorder's Office.

{¶11} On February 9, 2012, the Wendts filed a complaint against the Dickersons and Chesapeake Exploration LLC in the Tuscarawas County Court of Common Pleas. The complaint brought nine causes of action: declaratory judgment, quiet title, injunction, slander of title, unjust enrichment/quantum meruit, trespass, negligence/negligence per se, potential interference with business relationship, and constructive trust. The Wendts requested the trial court rule they were the lawful owners of the mineral rights. The Wendts argued pursuant to the 1998 version of the Ohio Dormant Mineral Act, the mineral rights merged with the surface estate no later than

March 22, 1992. The Dickersons filed a counterclaim alleging slander of title and intentional interference with business relationships.

{¶12} On February 24, 2012, the granddaughter of Marjorie I. Dickerson filed an application with the Harrison County Probate Court to relieve the estate of Marjorie I. Dickerson from administration.

{¶13} The Wendts filed a motion for summary judgment on December 23, 2012. The Dickersons filed a motion for summary judgment on December 17, 2012. The Dickersons' motion did not request judgment as a matter of law on their counterclaims.

{¶14} The Wendts dismissed Chesapeake as a party defendant on January 8, 2013.

{¶15} The trial court ruled on the pending motions for summary judgment on February 21, 2013. The trial court granted the Wendts' motion for summary judgment as it pertained to Wendts' claims for declaratory judgment, quiet title, and injunction. The trial court found the 1998 version of the Ohio Dormant Mineral Act applied and as such, the mineral rights merged with the surface estate on March 22, 1992. The Wendts were therefore the owners of the mineral rights underlying the surface estate. The trial court found there were genuine issues of material fact as to the Wendts' remaining claims. The trial court denied the Dickersons' motion for summary judgment. The trial court's decision on summary judgment is the subject of the within appeal.

{¶16} The trial court held a bench trial on the parties' remaining claims. The Wendts dismissed their claims for unjust enrichment and negligence. On January 15, 2014, the trial court issued its judgment entry that found the Wendts and the Dickersons were not entitled to judgment on their remaining claims.

**ASSIGNMENTS OF ERROR**

{¶17} The Dickersons raise two Assignments of Error:

{¶18} "I. THE TRIAL COURT ERRED BY FINDING THAT THE 1989 OHIO DORMANT MINERAL ACT APPLIES TO THIS CASE.

{¶19} "II. THE TRIAL COURT ERRED IN FINDING THAT THE 1989 ODMA WAS CONSTITUTIONALLY APPLIED TO THE APPELLANTS."

**ANALYSIS**

{¶20} The American energy boom from the drilling of Utica and Marcellus Shale has touched many aspects of life in the State of Ohio -- the economy, the environment, and now, the law. The history of Ohio is rich with the production of coal, oil, and gas. Ohio has managed to keep pace with the utilization of Ohio's natural resources, but the rapid development of the production of shale gas is testing Ohio's existing mineral rights laws. Energy development corporations are presenting Ohio landowners and mineral rights holders with the opportunity to lease the mineral rights for thousands of dollars per acre. Ohio landowners, mineral rights holders, and energy producers are looking to Ohio's mineral rights laws to answer their most important question: Who owns the mineral rights?

Ohio Dormant Mineral Act

{¶21} The law currently at the forefront of Ohio's energy boom is R.C. 5301.56, commonly referred to as the Ohio Dormant Mineral Act ("DMA"). The impetus for the creation of the DMA was a decision originating out of this Court and appealed to the Ohio Supreme Court: *Heifner v. Bradford*, 4 Ohio St.3d 49, 446 N.E.2d 440 (1983). In *Heifner*, the mineral rights were severed from the surface estate, causing two chains of

title. The mineral rights were transferred through the probate court. The surface estate was preserved by instruments filed in the recorder's office. Neither the surface chain of title nor the mineral rights chain of title referred to the other. The parties to the surface estate and the mineral rights both claimed the Marketable Title Act, functioned to give them marketable title to the mineral rights. The Fifth District held the surface deed transferred the entire estate, including the mineral rights. *Heifner* at 49. The Supreme Court reversed. It held the conveyance of the mineral rights that passed in 1957 under terms of will was a "title transaction" within meaning of Marketable Title Act; therefore, the beneficiaries' interest was not extinguished by operation of Marketable Title Act even though the surface estate had an unbroken chain of title of record of 40 years or more. *Heifner*, paragraph one and two of syllabus.

{¶22} The DMA was the General Assembly's response to *Heifner*. The DMA, effective March 22, 1989, was originally enacted as part of Ohio's Marketable Title Act. The 1989 DMA provides that a mineral interest held by one other than the surface owner "shall be deemed abandoned and vested in the owner of the surface" if no savings event occurred within the preceding 20 years. R.C. 5301.56(B)(1)(c). The six savings events are: (i) the mineral interest was the subject of a title transaction that has been filed or recorded in the recorder's office; (ii) there was actual production or withdrawal by the holder; (iii) the holder used the mineral interest for underground gas storage; (iv) a mining permit has been issue to the holder; (v) a claim to preserve the mineral interest was filed; or (vi) a separately listed tax parcel number was created. R.C. 5301.56(B)(1)(c)(i)-(vi).

{¶23} The 1989 DMA provided the following grace period: "A mineral interest shall not be deemed abandoned under division (B)(1) of this section because none of the circumstances described in that division apply, until three years from the effective date of this section." R.C. 5301.56(B)(2).

{¶24} The 1989 DMA was enacted to solve the title problems associated with severed mineral rights and to further the public policy interests in developing Ohio's minerals. The practical application of the 1989 DMA, however, caused confusion.

{¶25} In 2006, the General Assembly amended the DMA to fix the procedural problems associated with the 1989 DMA. The 2006 DMA clarified the 20-year period by calculating it as being the 20-years immediately proceeding the date when notice of intent is served or published by the surface owner on the mineral rights holders. It eliminated the three year grace period in R.C. 5301.56(B)(2). The 2006 DMA set forth a specific procedure for a surface owner to obtain the mineral interests. R.C. 5301.56(B) states the mineral interest "shall be deemed abandoned and vested in the owner of the surface," operates only if none of the savings events apply and "if the requirements established in division (E) of this section are satisfied." R.C. 5301.56(E) requires that

> Before a mineral interest becomes vested under division (B) of this section
> in the owner of the surface of the lands subject to the interest, the owner
> of the surface of the lands subject to the interest shall do both of the
> following:

> > (1) Serve notice by certified mail, return receipt requested, to each
> > holder or each holder's successors or assignees, at the last known
> > address of each, of the owner's intent to declare the mineral

interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

(2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

{¶26} The 2006 DMA also requires the mineral holder who claims an interest has not been abandoned may file with the county recorder: (a) a claim to preserve or (b) an affidavit containing a savings event within 60 days after the notice of abandonment is served or published. R.C. 5306.56(H)(1). If no such timely document is recorded, then the surface owner "who is seeking to have the interest deemed abandoned and vested in the owner" shall file with the recorder a notice of the failure to file. R.C. 5301.56(H)(2). "Immediately after" such recording, "the mineral interest shall vest in the owner of the surface * * *." *Id.*[1]

---

[1] However, this procedural mechanism was amended in 2014. R.C. 5301.56(H)(2) states that upon a holder's failure to file a claim to preserve, the surface owner seeking to have a mineral interest vested in them must file a notice of failure to file a claim to preserve in the county's recorder's office. Upon the recording of such notice, the mineral interest vests in the owner of the surface of the lands.

{¶27} The enactment of the 2006 DMA did not eliminate the conflict between the surface owner and the holder of the mineral interests. In order to determine who owns the mineral rights, the Ohio landowners, mineral rights holders, and energy producers are now asking: Which version of the DMA applies?

### Litigation Regarding the DMA

{¶28} On September 3, 2014, the Ohio Supreme Court accepted the appeal of *Walker v. Shondrick-Nau,* a case originating out of the Seventh District Court of Appeals.[2] In *Walker*, a severed mineral interest was created by a reservation in a 1965 deed. On April 27, 2012, the surface owner filed a quiet title action seeking abandonment and vesting of the mineral interest to the surface owner. On appeal, the Seventh District affirmed the judgment of the trial court to find the 1989 DMA could still be used after the 2006 DMA amendments because the prior statute was self-executing and the lapsed right automatically vested with the surface owner. *Walker*, 7th Dist. Noble No. 13NO402, 2012-Ohio-1499.

{¶29} The Supreme Court accepted all propositions of law presented in the *Walker* appeal. Those issues are:

Proposition of Law No. I: The 2006 version of the DMA is the only version of the DMA to be applied after June 30, 2006, the effective date of said statute.

---

[2] If a map of the potential Marcellus and Utica Shale in Ohio is compared to a map of the Ohio appellate districts, the observer will see that the counties of the Seventh and the Fifth District Courts of Appeals are at the epicenter of the mineral rights debate. The Court notes the property at question in the present appeal is located in Harrison County, a county within the territory of the Seventh District Court of Appeals. Other appellate districts that could be addressing these issues in the future are the Fourth, Eighth, Ninth, Tenth, and Eleventh.

Proposition of Law No. II: To establish a mineral interest as "deemed abandoned" under the 1989 version of the DMA, the surface owner must have taken some action to establish abandonment prior to June 30, 2006. In all cases where a surface owner failed to take such action, only the 2006 version of the DMA can be used to obtain relief.

Proposition of Law No. III: To the extent the 1989 version of the DMA remains applicable, the 20-year look-back period shall be calculated starting on the date a complaint is filed which first raises a claim under the 1989 version of the DMA.

Proposition of Law No. IV: For purposes of R.C. 5301.56(L3)(3) [sic], a severed oil and gas mineral interest is the 'subject of' any title transaction which specifically identifies the recorded document creating that interest by volume and page number, regardless of whether the severed mineral interest is actually transferred or reserved.

Proposition of Law No. V: Irrespective of the savings events in R.C. 5301.56(B)(3), the limitations in R.C. 5301.49 can separately bar a claim under the DMA.

Proposition of Law No. VI: The 2006 version of the DMA applies retroactively to severed mineral interests created prior to its effective date.

*Walker*, Ohio Supreme Court Case No. 2014-0803.

{¶30} As of the date of the authoring of this opinion, the Ohio Supreme Court has three other cases before it that question the appropriate application of the DMA:

*Chesapeake v. Buell*, Case No. 2014-0067; *Corban v. Chesapeake*, Case No. 2014-0804; and *Dodd v. Crosky*, Case No. 2013-1730.

{¶31} The present appeal now gives the Fifth District Court of Appeals the opportunity to address which version of the DMA applies.

I.

{¶32} The Dickersons' first Assignment of Error argues the trial court erred by finding that the 1989 DMA applied to the case. We disagree.

{¶33} The trial court granted the Wendts' motion for summary judgment to find the 1989 DMA applied to automatically vest the mineral rights in the surface owner. We refer to Civ.R. 56(C) when reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶34} The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court, which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(C) showing that a "triable issue of fact" exists. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801 (1988).

{¶35} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶36} In the Dickersons' appeal to this court, the Dickersons present arguments parallel to those outlined in the Seventh District Court of Appeals decisions in *Walker v. Shondrick-Nau, supra* and *Swartz v. Householder*, 2014-Ohio-2359, 12 N.E.2d 1243 (7th Dist.). As the appellants argued in *Walker* and *Swartz*, the Dickersons argue the trial court erred when it found the 2006 DMA was not retroactive and the 1989 DMA applied to determine the mineral rights automatically vested with the surface owners on March 22, 1992.

{¶37} Based on the Dickersons arguments, we are inclined to follow the persuasive authority of our colleagues in the Seventh District Court of Appeals to find the trial court correctly determined that the 1989 DMA applied and under the language

of the 1989 DMA, the mineral rights automatically vested with the surface owners on March 22, 1992.

{¶38} The Dickersons' first Assignment of Error is overruled.

## II.

{¶39} The Dickersons argue in their second Assignment of Error the trial court erred when it found the 1989 DMA was constitutionally applied to the Dickersons. We disagree.

{¶40} Upon review of the record, the Dickersons did not argue the constitutionality of the 1989 DMA in their motion for summary judgment. The trial court did not address the constitutionality of the 1989 DMA in its February 21, 2013 judgment entry granting summary judgment in favor of the Wendts. A bench trial was held on the parties' remaining claims. The Dickersons raised the constitutionality issue in their post-trial rebuttal brief. In the trial court's January 15, 2014 judgment entry ruling on the remaining claims, the trial court did not address the constitutionality argument.

{¶41} There could be argument that the Dickersons failed to truly raise the constitutionality of the statute at the trial court level, therefore rendering the issue waived for purposes of appeal. However, the court will address the Dickersons' second Assignment of Error.

{¶42} The United States Supreme Court examined a similar dormant mineral statute enacted by the State of Indiana in *Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781 70 L.Ed.2d 738 (1982). The Supreme Court found Indiana's DMA was not unconstitutional as a state may treat as abandoned a mineral interest that has not been used for twenty years and for which no statement of claim has been filed, and thus, a mineral holder can validly lose his interest without advance notice from the surface owner. *Swartz*, 2014-Ohio-2359 at ¶ 41 citing *Texaco,* 454 U.S. 516, 102 S.Ct. 781.

{¶43} Accordingly, we overruled the Dickersons' second Assignment of Error.

## CONCLUSION

{¶44} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J., and

Gwin, P.J. and.

Farmer, J., concurs.